MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY, Appellant,
   *v.* UNION - TRUST COMPANY of New York, Respondent,
   Impleaded with the CENTRAL TRUST COMPANY of New
   York.

1. SUBMISSION OF CONTROVERSY — QUESTIONS FOR DECISION. On the submission of a controversy upon admitted facts, under section 1279 of the Code of Civil Procedure, the court of first instance has jurisdiction to decide, and the Court of Appeals has jurisdiction to review, only the questions that were actually submitted and which arose out of the facts stated in the record.

2. RAILROAD MORTGAGE — SINKING FUND — GRADUAL REDEMPTION OF BONDS BY LOT. Where a railroad mortgage provides for a sinking fund and for the redemption of bonds drawn each year by lot, on a plan by which all the bonds will not be drawn until the expiration of the mortgage term, the mortgagor or its successor, after having caused the omission of certain annual drawings by failures of payment to the sinking fund, and having acquired certain of the bonds in some other manner, cannot enforce the lot redemption plan against the outstanding bonds, and so compel their cancellation, except by drawings covering all the bonds not theretofore redeemed by lot. It cannot proceed upon the theory that it is indebted to the sinking fund to an amount exceeding the aggregate of the outstanding bonds and that, hence, it has the right to pay up the sinking fund and thereby discharge all the bonds before the expiration of the mortgage term.

*Missouri, K. & T. R. Co.* v. *Union Trust Co.*, 87 Hun, 377, affirmed.

(Argued June 14, 1898; decided October 4, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered October 14, 1895, in favor of the defendant, the Union Trust Company, on the submission of a controversy by the parties, pursuant to section 1279 of the Code of Civil Procedure.

On the first of June, 1870, the Tebo and Neosho Railroad Company of Missouri made a mortgage to the Union Trust Company of New York upon its railroad line extending from Sedalia, Missouri, to the western boundary of that state, to secure two thousand seven per cent gold bonds for $1,000 each, payable on the first of June, 1903. By the fifth article of the mortgage, the mortgagor covenanted that it would, on

each first day of June, commencing in 1873, pay to the Union Trust Company, the trustee for the bondholders, as a sinking fund, " a sum equal to one per cent of the aggregate principal of the bonds secured hereby, together with interest thereon at the rate of seven per cent per annum in gold coin as aforesaid, by the operation of which sinking fund the whole principal of said bonds may be redeemed in thirty years from the date of the first annual payment." It was further provided that the trust company should, " in each and every year after said first payment, designate for redemption by lot an amount of said bonds equal to the accumulations in said sinking fund, which shall be redeemed at the par value thereof, due notice of the numbers of the bonds so designated having been previously published by the said party of the second part in two or more of the daily newspapers printed in the city of New York, for sixty days, at the expiration of which, interest on the bonds so designated shall cease, and the premises embraced in this mortgage shall thereafter be discharged from so much of the lien hereby imposed thereon as the bonds amount to thus designated for payment." Further provision was made for the cancellation of the bonds redeemed, and for the return thereof, when canceled, to the mortgagor.

After said bonds had been duly issued, and on the 4th of January, 1871, said mortgagor became, by consolidation, a constituent part of the system of the plaintiff, which assumed and became charged with all the obligations of the Tebo and Neosho Railroad Company and acquired its property and rights. Pursuant to the terms of consolidation, the plaintiff received in exchange for its own bonds 1,651 of the bonds first named, which are now in the possession of the Union Trust Company, the trustee named in each of the mortgages given to secure said issues of bonds respectively, as the financial agent of the plaintiff. There is no controversy as to said 1,651 bonds. The bonds of the plaintiff, issued at about the time of the consolidation, have been paid, and the mortgage given to secure them canceled and satisfied of record. The Union Trust Company also holds in the sinking fund, pro-

vided for in the Tebo and Neosho mortgage, three bonds of the series of two thousand secured thereby, and the Central Trust Company, as the financial agent of the plaintiff, has 159 more of the same series, which were redeemed and paid under a certain plan of reorganization, dated November 27, 1889, made by the plaintiff to retire its then existing bonded indebtedness. Said 159 bonds are subject to the order of the plaintiff for cancellation, and the Central Trust Company is willing to surrender the same for that purpose, and is made a party to the controversy, in order that all persons interested may be before the court.

There now remain outstanding in the hands of the public, as valid obligations, 187 of the whole issue of 2,000 bonds issued as aforesaid. Since June 19, 1873, no payment to the sinking fund has been made in compliance with the requirements of the clause already quoted, and the plaintiff, the successor of the mortgagor, is in arrears in its indebtedness to said fund to an amount exceeding $350,000. On the second of May, 1894, the directors of the plaintiff resolved to make the sinking fund good to the extent necessary to extinguish its indebtedness thereto, or at least sufficient to pay the bonds outstanding, with accrued interest and the costs and charges of the trustee, in order that said mortgage should be fully satisfied and canceled of record. On the 11th of February, 1895, the plaintiff, pursuant to said resolution, offered to pay to the Union Trust Company the sum of $193,000, with the request that the same, less the amount necessary to cover the expenses of the trustee, should be put into said sinking fund and should be applied by the trustee for the redemption of the principal and interest of the outstanding bonds, and that the trustee should proceed to call said bonds for cancellation and redemption in accordance with the provisions of the mortgage, and that when said bonds had been surrendered, or, in the event that all had not been surrendered when the sixty days' publication provided for should have expired and the bonds in the hands of the Central Trust Company should have been surrendered for cancellation, said trustee should

cancel and destroy the total issue of said bonds, amounting to $2,000,000, and that in case the whole, or less than the whole, of said 187 bonds should be surrendered, the trustee should cancel all the bonds surrendered to it, or already in its possession in the sinking fund, and that, thereupon, all the bonds should be canceled and the trustee should satisfy of record the mortgage given to secure them. The Union Trust Company did not accept said tender or comply with said request, but refused compliance unless ordered by the Supreme Court.

Upon a statement of facts, of which the foregoing is a synopsis, the controversy was submitted to the General Term as to the right of the Union Trust Company to thus refuse, and the court held that the company was right in refusing to accept the amount tendered, coupled with the condition that it should be applied to the paying off of the outstanding bonds and that the mortgage to secure them should be canceled. Judgment was accordingly directed in favor of the defendant, the Union Trust Company, with costs.

*Simon Sterne* and *Nathaniel A. Elsberg* for appellant. The plaintiff both has the right and rests under the obligation of making good its indebtedness to the sinking fund and of insisting that the sinking fund provisions of the Tebo and Neosho mortgage be carried out. (2 Abb. Law Dict. 2; 12 Am. & Eng. Ency. of Law, 533; *Platt* v. *Platt,* 58 N. Y. 646; *Vilas* v. *P. & M. R. R. Co.,* 123 N. Y. 440; *Deen* v. *Milne,* 113 N. Y. 303; *Nudd* v. *Powers,* 136 Mass. 273; *Daggers* v. *Van Dyck,* 37 N. J. Eq. 130.) The Union Trust Company of New York is under contract obligation to carry out on its part the sinking fund provision of said Tebo and Neosho mortgage and to receive payment of the mortgagor's indebtedness in said fund and to call in and redeem "an amount of said bonds equal to the accumulations in said sinking fund." And inasmuch as there are only 187 Tebo and Neosho bonds outstanding, aggregating in amount less than the amount of plaintiff's indebtedness to the fund, said trust company is by the terms of the mortgage required, upon payment by the

plaintiff of the necessary sum, to call in and redeem all of such 187 outstanding bonds. (*Calkins* v. *Falk*, 39 Barb. 620, 624; 1 Abb. Ct. App. Dec. 291.) The court below erred in holding that plaintiff only has the right to redeem the 187 outstanding bonds by future payments into the sinking fund and by the redemption of successive installments of such 187 bonds equivalent in amount to the respective amounts of such payments. (*People* v. *Security L. Ins. & Ann. Co.*, 78 N. Y. 114, 126; *Jackson* v. *Edwards*, 7 Paige, 386, 408; Code Civ. Pro. §§ 1569, 1570.) The court below erred in holding that the statement in the mortgage to the effect that by the operation of the sinking fund " the whole principal of said bonds will be redeemed in 30 years from the date of the first annual payment" is erroneous. It was not competent for the court to make such a determination or to import any inference whatever into a case submitted on an agreed statement of facts. (*Fearing* v. *Irwin*, 55 N. Y. 486, 489; *Clark* v. *Wise*, 46 N. Y. 612; *Neilson* v. *Com. Mut. Ins. Co.*, 3 Duer, 455; *Ketchum* v. *City of Buffalo*, 14 N. Y. 356, 378, 379; *Bank for Savings* v. *Grace*, 102 N. Y. 313, 316.) The court below erred in making the order and judgment appealed from. On the submission of a controversy on an agreed statement of facts it is the duty of the court to grant any relief which the facts justify and to make a judgment accordingly. (*Chicago, M. & St. P. R. Co.* v. *Hartshorn*, 30 Fed. Rep. 541; *Town of Strawberry Hill* v. *Chicago, M. & St. P. R. Co.*, 41 Fed. Rep. 568; *Graves* v. *Brinkerhoff*, 4 Hun, 305; 2 Beach on Law of Railways, par. 627; *Hayes* v. *Gaslight Company*, 29 Ohio St. 325; *Van Vechten* v. *Terry*, 2 Johns. Ch. 197.)

*Wheeler H. Peckham* and *Rufus W. Peckham, Jr.*, for respondent. No dealing by the railway company with any individual bondholder can change or alter the provisions of the mortgage sinking fund clause or elsewhere, so as to affect other bondholders not assenting. (*Barry* v. *M., K. & T. R. Co.*, 34 Fed. Rep. 829.)

Vann, J.  The question submitted for decision is whether it was the duty of the Union Trust Company, under the facts stated, to receive the money tendered and apply it to the redemption of the one hundred and eighty-seven bonds outstanding.  Other interesting questions have been argued before us by the learned counsel for the appellant, but they were not raised by the facts stated in the record before us, and were not submitted as a part of the controversy to the General Term.  That learned court had jurisdiction to decide, and we have jurisdiction to review, only the questions that were actually submitted, and which arose out of the facts stated in the record of submission.  The General Term could not decide, nor can we consider, what the duty of the Union Trust Company would have been had some other sum been tendered to it, or some other request made for the application of the sum in fact tendered.  Only one tender was made, and that was upon the condition that the amount thereof should be applied to the payment of the outstanding bonds, and that thereupon the mortgage should be satisfied.  No other theory of duty on the part of the trustee can be considered than whether it ought to accept *this* sum and apply it in *this* way, because the record presents no such question.  It may be that if the sum tendered had been accompanied by some other condition, or that the trust company had been requested to take some other action, it would have complied and no controversy would have arisen.

The sinking fund clause of the mortgage did not permit the trust company to comply with the condition upon which the tender was made.  Neither the mortgagor nor the plaintiff, which stands in its shoes, had performed the contract, so far as the sinking fund was concerned, and if it had, at the time the tender and request were made in February, 1895, about one-half only of the bonds would have been redeemed.  This would have left about one thousand bonds still outstanding, and the holder of each would have been entitled to refuse payment until his bond became due, according to the terms of the mortgage, or by means of the lottery provided by the mortgage.

The claim of the plaintiff that, by its dealings with individual bondholders, 1,810 of the bonds have been so disposed of that they can no longer be considered in connection with the sinking fund provision, is unsound, for the result would be that the mortgagor and a part of the bondholders could, by agreement between themselves only, change the rights of the remaining bondholders who did not assent to the arrangement. When the bonds in question were issued and negotiated, each bond had an equity represented by the chance that it might not be drawn by lot for redemption until it became payable in 1903. As the bonds drew a high rate of interest, that equity was valuable, and each bondholder had the right to insist that his bond should not be redeemed except in strict accordance with the contract contained in the mortgage. That contract has not been performed by the mortgagor or the plaintiff, and to now permit all the outstanding bonds to be called in, by suddenly, after the lapse of more than twenty years, enforcing the sinking clause provision, on the basis suggested, would enable the plaintiff to take advantage of its own wrong. The one who violates a contract habitually, for year after year, should not be allowed, by dealings with some of the bondholders, to reduce the value of the equity of the remaining bondholders. Whatever the plaintiff has done outside of the contract, by way of paying or acquiring bonds, cannot be considered as done under the contract or in any way credited upon the sinking fund clause. While we consider that clause as still in force, it cannot be enforced upon any basis less favorable to the outstanding bondholders than if the contract had been performed instead of violated. The plaintiff cannot extinguish the outstanding bonds by computation, but only by contract, and the bonds paid were not redeemed under the contract. While, if there was a drawing to-day, and all the bonds except the three already in the sinking fund were put into the hat, it would give the present bondholders an advantage, still the plaintiff cannot complain, if by its own conduct it has rendered any other method impossible without injuring those bondholders who are without fault. The bondholders

are the creditors and the plaintiff stands for the debtor, and the debtor cannot buy up half of his debts and affect the rights of those who hold the remainder.   We see no basis of treating bonds for redemption, now, under the sinking clause, that will be just to the outstanding bondholders unless 1,997 bonds are put into the hat, for no dealing by the plaintiff with those bondholders, who have accepted payment, can change the provision of the sinking fund clause or affect the outstanding bondholders.   They have the right to have their bonds redeemed only according to the contract, and, unless they are so redeemed, to hold them and draw interest upon them until the day of payment shall arrive.   It is only by putting all of the numbers but three in the hat and making one drawing up to date, and subsequent drawings on the same basis, that the 187 bonds outstanding will have their equities preserved and suffer only the chance of redemption that the sinking fund clause provides.   The bonds redeemed by private contract cannot be treated as redeemed under the mortgage contract, but must take their chances in the lottery with those still outstanding.   In other words, as held in *Barry* v. *M., K. & T. Ry. Co.* (34 Fed. Rep. 829), purchased bonds must, for many purposes, and in this case for the purpose of the sinking fund clause, be considered as still unpaid, so far as the rights of the outstanding bondholders are concerned.

As the only question lawfully presented to the court below was the right of the plaintiff to make the tender and demand as stated, we think that judgment was properly rendered against it, for, if the agreement had been kept by it, at least 479 bonds would be outstanding to-day, of which only a limited number, to be determined by lot, could be redeemed each year. The outstanding bondholders have a right to receive their debt only as provided by the contract.   That right is as sacred as to receive it at all.   The obligation of the debtor is to pay the principal when it becomes due, and he has no right to compel the creditor to accept payment until it becomes due. At the time the tender was made many payments and redemptions by lot should have been made, and treating them as

made, all the bonds left would be outstanding. Each of the present bondholders, therefore, has the right to have all subsequent drawings. made upon that basis instead of the basis contended for by the appellant, upon the ground that it had seen fit by private contract to pay and discharge a large number of the bonds, not under the sinking fund clause, but by arrangements made otherwise than in accordance with the mortgage. The plaintiff cannot proceed upon the theory that it is indebted to the sinking fund to an amount exceeding the aggregate of the outstanding bonds, and that, hence, it has the right to pay up the sinking fund and thereby discharge all of said bonds. We are not called upon to decide what the plaintiff might have required if it had asked for it, but simply to decide whether it was right in requiring what it did. That question we decide against it, and this leaves nothing further to be considered.

The judgment of the General Term should be affirmed, with costs.

All concur, except PARKER, Ch. J., and GRAY, J., not sitting.

Judgment affirmed.