HARNICKELL v. OMAHA WATER CO. et al.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

1. MORTGAGES (§ 101*)—CONSTRUING TERMS AS A WHOLE.

The interpretation of an instrument under seal, such as a mortgage, is to be reached by a fair consideration of all its terms and provisions; it being improper to detach isolated phrases from their context and examine them by themselves, but the whole document is to be construed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 210; Dec. Dig. § 101.*]

2. WATERS AND WATER COURSES (§ 188*)—BONDS SECURED BY MORTGAGE— TERMS OF REDEMPTION—INTEREST—"ANY SALE OF THE PROPERTY."

An ordinance of the city of Omaha granted a right of way in its streets for the construction and maintenance of waterworks, together

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with a contract to furnish the city with water for 25 years, and provided that the city, at any time after 20 years, might purchase the waterworks at an appraised value. The works were completed in 1883, and in 1896 the water company, which was then the owner of the waterworks and franchises, executed to a trust company in this state a prior lien mortgage of the waterworks, etc., to secure bonds due in 1916, which referred to the ordinance, and provided that the water company should pay the principal of the bonds issued, when due; that the water company might, at any time, redeem the bonds at 105 and interest, and that upon a default in interest or in any of the agreements of the water company, or on the appointment of a receiver, the principal of all outstanding bonds should become due, at the election of the trustee; that "upon any sale of the property  *  *  *  the principal of all the bonds secured and outstanding shall become due, if not already due"; and other provisions in case of default or foreclosure. In 1903 the city, under the reservation in the ordinance, elected to purchase, and the water company was decreed to file a power of attorney authorizing the trustee to discharge the mortgage upon payment of the amount of all outstanding bonds and interest, and that the balance of the proceeds be paid by the city direct to the water company; and thereunder the trustee claimed a sum equal to all of the bonds for redemption at 105 and accrued interest. *Held*, that the mortgage contemplated only a sale at the instance of the trustee in proceedings after default or a receivership; the provision as to "any sale of the property" referring only to a sale under the terms of the mortgage, and not to a sale under the reservation contained in the ordinance, and hence that the bonds must be redeemed at 105 and accrued interest.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 188.*]

Laughlin, J., dissenting.

Action by H. C. Harnickell, on behalf of himself and all others similarly situated, against the Omaha Water Company and the Guaranty Trust Company of New York, as trustee. Submission of a controversy on an agreed state of facts. Judgment for plaintiff.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Lansing P. Reed (Charles Howland Russell and Edwin G. Baetjer, of counsel), for plaintiff.

Stetson, Jennings & Russell, for defendant Guaranty Trust Co.

Lord, Day & Lord (Howard Mansfield, of counsel), for defendant Omaha Water Co.

CLARKE, J. In 1880, the city of Omaha, Neb., provided by ordinance that any person, company, corporation, or association who should construct and maintain a waterworks for the purpose of supplying said city with water should have the right of way along, upon, and under the public streets of said city for the purpose of placing and repairing their mains, and provided for awarding the right to construct such waterworks, together with a contract for furnishing said city with water for fire protection and use, for 25 years, upon the completion of the works, to the lowest responsible bidder. Said ordinance contained the following provision:

"The city of Omaha shall have the right at any time after the expiration of 20 years to purchase the said waterworks at an appraised valuation,

which shall be ascertained by the estimate of three engineers, one to be selected by the city council, one by the waterworks company, and these two to select the third: Provided, that nothing shall be paid for the unexpired franchise of said company."

Thereafter such contract for water supply was awarded to one Sidney E. Lott, by whose assigns said waterworks were subsequently constructed, and were accepted by said city as completed as in full and complete compliance with said contract and ordinances on September 4, 1883. Through various mesne conveyances and transfers the defendant, the Omaha Water Company, became on July 23, 1896, the owner of said waterworks, and the assignee of said contract and of the grants and franchises. On that day the water company executed and delivered to the defendant the Guaranty Trust Company of New York, as trustee, a prior lien mortgage, mortgaging all of said waterworks and said grants, franchises, and contract rights, together with other property, grants, franchises, and rights, to secure bonds to the amount of not more than $1,500,000; such bonds being payable by their terms July 1, 1916, together with interest thereon until paid at the rate of 5 per cent. per annum. On said day it also executed and delivered to the Farmers' Loan & Trust Company, as trustee, a consolidated mortgage, mortgaging all of said waterworks, grants, franchises, and contract rights to secure bonds to the amount of not more than $6,000,000; such bonds being payable by their terms July 1, 1946, together with interest until paid at the rate of 5 per cent.

Bonds secured by said prior lien mortgage have been issued and are now outstanding to the amount of $1,262,000, and the interest thereon has been duly paid to and including January 1, 1911. Bonds secured by said consolidated mortgage have been issued and are now outstanding to the amount of $3,543,000, and the interest thereon has been duly paid to and including January 1, 1911, making a total of outstanding bonds of both kinds of $4,805,000. March 2, 1903, the city of Omaha elected to purchase the system of waterworks operated by the Omaha Water Company, and thereby became irrevocably bound to purchase said system at an appraised valuation to be ascertained as provided. The appointment of three engineers, as appraisers, was duly made, and the valuation of said system of waterworks was duly ascertained by the estimate of a majority of the three appraisers to be $6,263,295.49, as of July 7, 1906. In a suit brought by the water company against the city in the United States Circuit Court for the District of Nebraska, a decree was entered, dated October 24, 1910, requiring the city to purchase the entire system of waterworks operated by the Omaha Water Company, wherever situate, to complete its purchase and pay said sum, with interest thereon at the rate of 7 per cent. per annum from July 9, 1906, to the date of payment. See 162 Fed. 225, 89 C. C. A. 205; 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991.

It is provided in said decree that the water company may file with the clerk of said Circuit Court powers of attorney from the Guaranty Trust Company of New York and the Farmers' Loan & Trust Company, as trustees, authorizing the representatives of said trustees to execute and deliver certificates discharging said mortgages upon payment over by the city of Omaha to such trustees, respectively, from the

proceeds of sale, of the amounts requisite to pay off all outstanding bonds, with accrued interest, and to discharge said mortgages; the balance of such proceeds of sale being paid by said city directly to the water company. The water company proposes and intends to pay off, or cause to be paid off, at par and accrued interest only, all of the bonds outstanding under each of said mortgages without redeeming any of said bonds, claiming that by the terms of each mortgage all of the bonds secured thereby and then outstanding will become due upon the completion by the city of Omaha of its purchase of said water-works. Said trustees insist upon receiving from said proceeds of sale, not only the amount at par of all of the bonds outstanding under said mortgages, together with a sum equal to the amount of interest there-on, but an additional sum equal to 5 per cent. on the value of all the bonds outstanding, and further insist, as a condition of satisfying and discharging said mortgages, that the Omaha Water Company shall call all of said bonds for redemption at 105 and accrued interest.

The plaintiff claims that the water company cannot lawfully re-quire any of the holders of said prior lien bonds to accept anything less than 105 per cent. and accrued interest for their bonds, through re-demption thereof, except upon the maturity of the bonds by their terms on July 1, 1916, and the controversy existing is submitted to this court for decision upon an agreed statement of facts.

The plaintiff is the owner and holder of $3,000 in amount of said prior lien mortgage bonds. Each of said bonds contains the following:

"Under certain conditions the principal of all the bonds issued under said mortgage may become due and payable before maturity as provided in the mortgage. * * * This bond is redeemable at any time by said water company at 105 per cent. and accrued interest as provided in said mortgage."

The mortgage includes in the description of the mortgaged prop-erty the following:

"All the property, right, title, and interest, claims and demands which the water company has or shall acquire under or by virtue of a certain ordinance of the city of Omaha in the state of Nebraska, known as Ordinance 423, en-titled 'An ordinance to authorize and procure the construction and mainte-nance of waterworks in the city of Omaha, state of Nebraska, passed by the city council of said city, and approved by the mayor thereof, on the 11th day of June, 1880, and all other ordinances of said city amendatory thereof or supplemental thereto.'"

The mortgage contains the following clauses:

"Second. The water company shall pay the principal of all the bonds duly issued under this mortgage, when the principal shall become due by the terms of the bonds or by redemption or declaration, as hereinafter provided, upon the surrender of the bonds."

"Fourth. The water company may at any time redeem any of the bonds secured by this mortgage at 105 per cent. and accrued interest."

Then follow provisions for redemption:

"Tenth. If default shall be made in the payment of any interest on any of the bonds secured by this mortgage, or by said underlying mortgage, or in any of the agreements on the part of the water company hereunder, and such default shall continue for 90 days after written demand of payment or performance, or if a receiver of the property of the water company hereby mortgaged shall be appointed in any proceeding, the principal of all the said

bonds then outstanding, with all interest accrued and unpaid thereon, shall become due and payable at the election and upon the declaration of the trustee, or upon the declaration of the holders of one-third in amount of the bonds secured by this mortgage and then outstanding, made as hereinafter provided and filed with the trustee; but the holders of a majority in amount of the bonds hereby secured may, at any time hereafter, until a sale of the property and franchises secured by this mortgage, reverse in like manner any such declaration previously made by the trustee or by bondholders, or, such default or receivership continuing or again happening, such principal may again in like manner as aforesaid be declared to be due; and said principal shall cease to be due or become due accordingly: Provided, however, that, in case of any such declaration made by the trustee, the payment of all interest, taxes, or other charges due, and the performance of any agreements as to which default shall have been made, shall operate to reverse and avoid such declaration made by the trustee. But upon any sale of the property and franchises covered by this mortgage, the principal of all the bonds secured hereby and then outstanding shall become due, if not already due by the terms of the bonds or by declaration as herein provided."

The water company claims that the sale of its property and franchises to the city of Omaha upon its election to purchase, reserved by it in its original ordinances authorizing the construction of the waterworks, is the sale contemplated and provided for in the last clause of paragraph 10 of the mortgage, quoted supra, and that upon said sale the principal of all the bonds became due, and that it was authorized to demand the satisfaction of the mortgage upon the payment to the trustees of all the bonds outstanding at par with accrued interest. The trustees and the plaintiff, as a bondholder, claim that the transaction set forth does not constitute the sale provided for in said section, but that the bonds are not due and payable until the date mentioned upon their face, and that they can only be paid off and retired by the exercise of the reserved option to redeem at 105. The company claims that the allusion to the ordinance, contained in the recital of the property covered by the mortgage, was notice that its property and franchises were held subject to the exercise by the city of its option to purchase, and that when said option was exercised the city acquired the property as by condemnation proceedings, and that the phrase "any sale of the property and franchises" was broad enough to cover and provide for such a sale.

[1] The interpretation of an instrument under seal is to be arrived at by a fair consideration of all its terms and provisions. Isolated phrases are not to be torn from their context and examined by themselves, but the whole document is to be construed.

[2] We have here a mortgage given for the security of long-term bonds issued to a large amount to investors, who are entitled to rely upon the permanency of the investment as expressed upon the face of the instruments, and to look to those instruments alone for the terms and conditions upon which their money is invested. The mortgage is given for security. It vests in the trustees, acting for the bondholders, and in a certain proportion of the bondholders themselves, the power, under specified conditions and for their own protection, to take possession of the property and administer or dispose of it. That is the purpose of a mortgage.

The tenth clause cited above provides for three contingencies: First, upon a default in payment of interest; second, a default in any of

the agreements by the water company; third, if a receiver should be appointed, that then the principal of all said bonds outstanding shall become due and payable, at the election and upon the declaration of the trustee, or upon the declaration of the holders of one-third in amount of the bonds. The eleventh clause, again in the interest and for the protection of the bondholders, provides that, if default shall be made and continue for 90 days, the trustees may enter and take possession of the property of the company and operate it; but if, after such entry, all interest due on the bonds shall be fully paid out of the income of the property, and the principal shall not be due by the terms of the bonds or by declaration, the trustees shall restore said property to the water company. The twelfth clause provides that, in case of default and upon request, the trustees shall cause all of the property and franchises to be sold. The fifteenth confers power upon the trustee in case of default to begin foreclosure. By the sixteenth the water company, while any bonds are outstanding, shall not apply for the appointment of a receiver, and no holder of bonds shall have a right to begin foreclosure or other proceedings until the trustee shall refuse or neglect to act after sufficient request. By the eighteenth, in case of a foreclosure, or any judicial or other sale of the property or franchises held in trust under this mortgage, the purchaser may, in completing payments of the purchase price, apply any bonds and coupons secured hereby then unmatured and unpaid.

So that the whole instrument, it seems to me, contemplates but one kind of a sale, and that is at the instance of a sufficient number of the bondholders, or by the trustee in proceedings for the foreclosure of the mortgage and for the protection of the rights of the bondholders; and the phrase "any sale of the property and franchises," in the last paragraph of the tenth clause, must refer to any sale contemplated and provided for by the terms of the mortgage itself. In Lisman v. Michigan Peninsular Car Co., 50 App. Div. 311, 63 N. Y. Supp. 999, where a similar clause in a corporate mortgage was under consideration, this court said:

"Stress is laid upon the last sentence of the clause quoted, and particularly upon the words 'upon any sale of the property.' The sale referred to in this clause manifestly refers, not to a voluntary sale, but to one made after default and in proceedings taken to foreclose the mortgage—a sale under the mortgage, and not a sale subject to it. This is clear when the ninth clause is read in connection with the other provisions of the mortgage, and especially with the second and fifth clauses. * * * When all of the provisions of the mortgage are thus read and construed together, it is clear that it was never intended to give to the mortgagor the right by its own act to pay the principal of the bonds in advance of the time specified in them when the same would mature. Any other construction would not only be unreasonable and unfair to the bondholders, but contrary to the express provisions of the mortgage. If there be any doubt, which we do not think there is, as to what sale was referred to by the use of the words 'any sale' in the ninth clause, then that construction must be adopted which is most favorable to the bondholders, and one which will not impair their security in any way. * * * The bondholders have a right to insist that defendant shall carry out its contract; that it shall pay its bonds when it agreed to, and not before; and that in the meantime the interest shall be paid at the times stipulated. The recent case of Missouri, K. & T. R. Co. v. Union Trust Co., 156 N. Y. 592 [51 N. E. 309], is in point. Judge Vann, delivering the opinion of the court in

that case, said: 'The outstanding bondholders have a right to receive their debt only as provided by the contract. That right is as sacred as to receive it at all. The obligation of the debtor is to pay the principal when it becomes due, and he has no right to compel the creditor to accept payment until it becomes due.' "

There is a precise provision in this mortgage under which the mortgagor can pay the mortgage debt before it is due. It is expressly provided that it may at any time redeem any of the bonds at 105 per cent. and accrued interest. We think the clear meaning of the whole instrument is that the company has promised to pay the bonds according to their terms at the due date expressed therein; that if it desires to pay them off prior to the time so fixed it can do so, and can only do so, upon the terms expressed in the mortgage, at 105 per cent. and interest. That is a matter over which the company has control. The acceleration of the due date under the tenth and other clauses quoted is solely for the benefit of the bondholders, and is brought about by their action or that of their trustee, and is evidenced by a formal declaration of the trustee, or by the holders of one-third of the outstanding bonds, or upon a sale of the property incident to foreclosure proceedings taken under the mortgage.

We think that the plaintiff and the trustee are right in their contention, and that upon the submission there should be judgment for the plaintiff as prayed in the complaint, with costs.

INGRAHAM. P. J., and SCOTT and DOWLING, JJ., concur. LAUGHLIN, J., dissents.