# Richmond

## Manufacturers Trust Company, Successor Trustee, etc., v. Roanoke Water Works Company.

February 20, 1939.

Record No. 2049.

Present, All the Justices.

The opinion states the case.

*Williams & Robertson* and *Carter, Ledyard & Milburn,* for the plaintiff in error.

*Woods, Chitwood, Coxe, Rogers & Muse,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In April, 1937, the city of Roanoke instituted condemnation proceedings under the provisions of chapter 176 of the Code of Virginia against the Roanoke Water Works Company (hereinafter called the Water Company) to acquire its entire water works system. The property sought to be condemned was covered by a first lien mortgage from the Water Company to Chatham Phenix National Bank and Trust Company, as trustee, securing bonds issued and outstanding in the principal sum of $3,362,800, dated July 1, 1925, maturing July 1, 1950, and bearing interest at the rate of five per centum per annum, payable semi-annually. The rights and duties of the Chatham Phenix National Bank and Trust Company as trustee had, in the meanwhile, passed to the Manufacturers Trust Company, a New York corporation. For the sake of brevity the last-named institution will be referred to as the Trustee.

The Water Company was made the sole defendant in the condemnation proceedings, and neither the Trustee nor the bondholders were joined.

In due course the award was fixed by the court at $4,523,437. While at one time the Water Company signified its intention of applying for a writ of error to review the order fixing the award, this course was abandoned and the award was paid into court on April 28, 1938, by the city of Roanoke. In the meantime an order had been entered notifying all lien creditors of the Water Company to appear before the court at ten o'clock A. M. on April 30, 1938, and prove their respective claims in order that the court might direct the immediate distribution of the award to the parties entitled thereto. Pursuant to the terms of the order a certified copy thereof was published in one of the Roanoke newspapers.

On April 30, 1938, the Trustee appeared and filed a written proof of claim in which it asserted that the mortgage was the first and only lien on the property condemned; that bonds in the principal of $3,362,800 had been issued thereunder and were outstanding in the hands of the public; that under the express terms of the bonds the principal was not due and payable until July 1, 1950; that, under the terms of the bonds and the mortgage, payment of the principal of the bonds could be anticipated only at the election of the Water Company and then only by paying, in addition to the principal, the call premium and the amount of interest therein specified; that under the provisions of Code, section 4374, the lien of the mortgage was transferred to the award when the latter was paid into court; that under the express terms of the mortgage the entire award for the Company's property thus taken in the condemnation proceedings should be paid to it, the Trustee, to be administered by it as a part of the trust estate; and that in express terms the mortgage conferred upon the Trustee the authority and placed upon it the duty of intervening in the present proceedings on behalf of all of the bondholders for the purpose of protecting their interests in the distribution of the award.

The prayer of the petition was that the court pay to the Trustee "the entire amount of said award, to-wit, $4,523,437, to be held and administered by it pursuant to the terms of said First Mortgage and supplements thereto."

At the same time two holders of bonds in the sum of $1,000 each, another holder of $30,000 of bonds, and a fourth holder of $39,000 of bonds appeared by counsel. While these four bondholders filed no formal proofs of claim their respective attorneys participated in the proceedings and opposed the claim of the Trustee that the entire award be paid to it. Subsequently the attorney representing the holder of $39,000 of bonds withdrew his appearance. No other bondholder appeared at that meeting or has subsequently formally intervened in the present proceedings.

It developed at the hearing, on April 30th, from the report of counsel appointed by the court for the purpose, that

there were no liens on the property condemned except current taxes which had been assumed by the city and the first mortgage indebtedness of $3,362,800.

Shortly after this hearing the judge of the lower court, Honorable Beverley Berkeley, in a letter to counsel for the respective parties, announced his conclusion, (1) that under Code, section 4374, it was the duty of the court to distribute the fund direct to the bondholders without the intervention of the Trustee, and (2) that the condemnation proceedings had effected an acceleration of the maturity of the bonds as of April 30, 1938.

On May 11, 1938, Honorable James L. Almond, Jr., sitting for and at the request of Honorable Beverley Berkeley, the latter being incapacitated by illness, entered two orders carrying into effect the conclusions announced by Judge Berkeley.

In the first of these orders the contention of the Trustee was overruled and its petition was dismissed. Thereupon the Trustee announced to the lower court its intention of immediately applying to the Supreme Court of Appeals of Virginia for a writ of error to review the action of the lower court in dismissing its petition and denying to it the right to receive and administer the award. The Trustee then moved the court "to retain in its depository pending the prosecution of said writ of error, and to enable this court to make proper disposition thereof, should the Trustee's contentions be sustained by said Supreme Court of Appeals, a sum sufficient to cover (1) interest on the principal amount of said bonds at five per cent. from April 30th, 1938, to January 1st or July 1st following the date of probable final disposition of said writ of error, (2) the amount of the redemption price, computed in accordance with the terms of said First Mortgage as of the date aforesaid, and (3) the expense and allowance to said Trustee and its counsel as defined by said First Mortgage."

Since the Trustee signified its unwillingness and inability to execute a proper suspending or supersedeas bond, the court declined to grant this motion.

The lower court then proceeded, on the same day, to enter a second order which directed the special commissioner (a local bank which had been appointed for the purpose of receiving and holding the amount of the award paid into court) to hold the total amount of $3,450,000 covering the following items: Principal on all outstanding bonds, $3,362,800, interest thereon at the rate of five per centum per annum from January 1 to April 30, 1938, $56,046.67, "to cover contingencies," $31,153.33, and to pay the balance of $1,073,437 to the Water Company.

This order further provided that the special commissioner should pay to the holders of the first mortgage bonds "upon presentation and surrender thereof for cancellation, the par value of said bonds with interest thereon at five per cent. from January 1st, 1938, through April 30th, 1938." The order contained a provision for notifying the bondholders to this effect both by mail to their last known addresses and by publication of such notice in the daily newspapers of Roanoke, Richmond and New York.

The court overruled the Trustee's motion that the notice to the bondholders be amplified "by adding a statement that the Trustee had appeared and asked for call premium and additional interest, and upon its denial had signified its intention of appealing, and by a further statement that the surrender of the bonds would not constitute a waiver by the holders of their right to participate in any additional sum by way of premium or interest which might thereafter be paid as a result of the appeal."

It appears from the special commissioner's report dated December 21, 1938, and presented at the oral argument before us, that bonds amounting to the principal sum of $3,-182,500 have been unconditionally surrendered and paid, together with interest thereon to April 30, 1938, as provided in the order of distribution. The total principal amount of bonds outstanding and as yet unpaid amount to $180,300.

This writ has been granted to review the two orders entered by the lower court on May 11, 1938.

In the briefs there is considerable argument as to whether the trial court erred in not paying to the Trustee the entire award of $4,523,437, to be administered by it. The Trustee insists that the parties had expressly contracted in the mortgage that this be done and that this provision should have been carried out, or at least that the court should have paid to the Trustee a sufficient amount to have discharged the principal sum of all of the outstanding bonds, together with the call premium thereon provided for in the mortgage in the event the bonds should be redeemed prior to maturity.

On the other hand, the Water Company contends that this provision in the mortgage is contrary to and must yield to the language of Code, section 4374, which provides that "the *court* shall make such distribution of such money as to it may seem right." (Italics supplied.)

██ It is not necessary that we decide what disposition the court should have made of the fund in the first instance, for that is now a moot question. It is conceded that the greater portion of the fund has already been distributed to the bondholders and has been accepted by them. Had the Trustee desired to preserve the *status quo* and prevent a distribution of the fund pending this appeal, it should have given a suspending or supersedeas bond as indicated by the lower court. This the Trustee was unwilling to do and consequently it is in no position to complain. Under the circumstances, in order to avoid a large accumulation of interest, the trial court was clearly right in distributing the fund to those who were willing to accept it.

█ Neither are we concerned here with the rights of those parties whose bonds have been paid. The record shows that the principal of these paid bonds amounts to $3,182,500. It also shows that these bonds were voluntarily presented to the special commissioner for payment in accordance with the terms of the court's order. The amounts paid to these bondholders were accepted and the bonds were surrendered and cancelled without reservation. None of these bondholders is now complaining or asking for any additional interest or call premium. Clearly these bonds have been

paid and satisfied and their former holders have no further interest in this litigation.

We turn next to the rights of those bondholders who have not presented their bonds for payment and who have not accepted the terms imposed upon them by the lower court's order of distribution. These parties hold bonds in the principal sum of $180,300, or about 5½ per centum of the total issue.

■ Counsel for the Water Company argues that since none of these bondholders has filed a proof of claim in the court below, the rights of these parties are not before us, and that the Trustee is representing only itself.

There are two answers to this argument. In the first place, the mortgage authorizes and empowers the Trustee to represent the interest of these bondholders. The mortgage here involved is no ordinary deed of trust. It is a document of one hundred and fifty-three printed pages and contains the provisions ordinarily found in bond issues of this size and character. It contains the usual provisions appointing the Trustee the special agent and representative of the bondholders, with full power to sue on their behalf both at law and in equity, for the interpretation and enforcement of the mortgage. It further provides that each bondholder, by the acceptance of a bond issued thereunder, agrees to its terms.

The evident purpose of such provisions is to insure that there shall be at all times a bondholders' representative authorized to act for a numerous changing and widely scattered class of principals. The right and duty of the trustee under such a mortgage to represent the bondholders was recognized and enforced by this court in *Virginia Passenger & Power Co.* v. *Fisher,* 104 Va. 121, 51 S. E. 198. See also, Fletcher Cyclopedia Corporations (Perm. Ed.), sections 3179, 3186.

■ In the next place, the argument of the Water Company that the rights of the bondholders are not before us can not be reconciled with its main contention that their rights to additional interest and a call premium have been

terminated by the condemnation proceedings, which theory the trial court adopted. If these bondholders were not before the court below, it, of course, had no right to enter an order affecting their rights. In order to have adjudicated the rights of the bondholders the lower court must necessarily have held that these parties were properly before it. It therefore follows that they are now properly before us.

The trial court did not indicate upon what reasoning it based its conclusion that the maturity of the bonds was accelerated. The brief of counsel for the Water Company states: "The defendant contends, and the trial judge held, that the vesting of fee simple title in the condemnor necessarily had the effect of accelerating the maturity of all mortgage indebtedness on the property condemned, i. e., that under sections 4369 and 4375 of the Code the right of the mortgagee [bondholder] to hold his debt until its stated maturity was taken under the power of eminent domain to the same extent and in the same way as the physical property of the mortgagor." We assume that this correctly sets forth the trial court's views.

The substance of this holding is that not only has the bondholders' interest in the land itself been extinguished by the condemnation proceedings, but that also their rights in the condemnation award have been partly extinguished by such proceedings.

The position of counsel for the Trustee and the bondholders is that while the State had the undoubted power, if the Legislature had so enacted, to condemn the bondholders' interest in both the land and in the fund paid into court, our statutes do not purport to effect this; that while under Code, section 4374, the interest or estate of the owner of the land terminates after the payment of the award into court, all liens on the property are "transferred to such money so paid into court" unimpaired; and that hence it must distribute the fund to the bondholders strictly in accordance with the contract of the parties as expressed in the bonds and the mortgage.

In some jurisdictions where it is held that the mortgagee is the holder of a defeasible title to the land sought to be acquired, he is a necessary party to the condemnation proceedings. 18 Am. Jur., Eminent Domain, section 235, p. 868.

In other jurisdictions, in which it is held that the mortgagee is merely the holder of a lien and not the holder of the legal title to the land to be acquired, he is not a necessary party. 18 Am. Jur., Eminent Domain, section 235, p. 870.

Virginia is in the latter classification. Code, section 4365, provides that notice for the application of commissioners to ascertain the just compensation for land or other property of the "owner" sought to be condemned "shall be served on the tenant of the freehold." In construing this section this court held in *Fonticello Company* v. *City of Richmond*, 147 Va. 355, 368, 369, 137 S. E. 458, that the holder of a deed of trust is not entitled to notice of the proceedings fixing the compensation for the property to be acquired, and that he is not an "owner" of the property to be condemned within the meaning of this section.

But all the authorities agree that whether, in order to give the condemnor a clear title to the land to be acquired, the mortgagee is a necessary party to the condemnation proceedings or not, the award equitably stands in the place of the land taken and is subject to the unimpaired claim of the mortgagee.

In *United States F. & G. Co.* v. *Asheville*, 85 F. (2d) 966, 970, the court speaking through Judge Parker said: " 'There is a general agreement of the authorities that the damages awarded for land taken under eminent domain proceedings constitute a fund standing in place of the land and which may be subjected by the mortgagee to pay the debt secured by the mortgage.' And even in those jurisdictions where the mortgagee is not considered as owner and is not a necessary party to the condemnation proceedings, he may in a court of equity follow the award and have it applied to his mortgage debt."

See also, 18 Am. Jur., Eminent Domain, section 235, p. 868, etc.; Jones on Mortgages (8th Ed.), section 843, p. 154.

Code, section 4374, provides: "After the payment of the amount of compensation and damages into court as hereinbefore prescribed, the interest or estate of the owner or owners which has been condemned, as aforesaid, shall terminate, and they shall have such interest or estate in the compensation or damages paid into court as they had in the property so taken or damaged, and all liens by a deed of trust, judgment, or otherwise upon said property or estate shall be transferred to such money so paid into court, and the court shall make such distribution of such money as to it may seem right, having due regard to the interest of all persons therein, * * * ."

This language is perfectly plain. Its purpose is to transfer the title to the acquired land to the condemnor free of liens, and to transfer the liens with full force and effect to the fund paid into court. It clearly negatives the contention that the rights of the bondholders in the fund, beyond the right to collect the principal and interest to April 30, 1938, were condemned in the proceedings.

It should be remembered, too, that the rights of the bondholders are quite substantial. Under the terms of the bonds the principal does not mature until July 1, 1950. Until that time the bonds bear interest at the rate of five per centum per annum, payable semi-annually. While the Water Company has the right to redeem the bonds, this can be done only upon paying the bondholders the required call premium. It is a matter of common knowledge that such provisions materially add to the value and marketability of bonds.

These substantial rights of the bondholders the Water Company argues were terminated by the condemnation proceedings, notwithstanding the fact that the bondholders were given no opportunity of proving the value of their rights and of being compensated therefor.

For this court to adopt the argument of the Water Company would bring the Virginia condemnation statutes

and this proceeding into plain conflict with the due process clause of the Fourteenth Amendment to the Federal Constitution, U. S. C. A., and that of the Virginia Constitution, section 11, since it would result in the taking of valuable rights of the bondholders without notice to them and without giving them the opportunity of proving the value of those rights and of being compensated therefor.

It is well settled that the prohibitions of the Fourteenth Amendment "extend to all acts of the State, whether through its legislative, its executive, or its judicial authorities." See *Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226, 234, 17 S. Ct. 581, 583, 41 L. Ed. 979; *Scott* v. *McNeal,* 154 U. S. 34, 45, 14 S. Ct. 1108, 38 L. Ed. 896; *Ex parte Virginia,* 100 U. S. 339, 347, 25 L. Ed. 676.

Nor do we think that the order directing the lien creditors to appear on April 30, 1938, and prove their claims against the fund, and the proceedings thereafter, complied with the due process clause of the Fourteenth Amendment and that of the Virginia Constitution, as contended by the Water Company. This notice provided that the "said lien creditors shall appear before the court and present and prove their respective claims in order that the court may at the time direct the immediate distribution of said fund to the parties thus found entitled thereto."

As we have seen, the commissioners had already filed their report fixing the award to be paid to the owner of the property sought to be acquired, and this award had been confirmed by the lower court. Neither prior nor subsequent to this were there any proceedings to fix the value of the bondholders' rights and to compensate them therefor.

In *Chicago, B. & Q. R. Co.* v. *Chicago, supra,* the court said (166 U. S. at page 236, 17 S. Ct. at page 584): "The legislature may prescribe a form of procedure to be observed in the taking of private property for public use, but it is not due process of law if provision be not made for compensation. Notice to the owner to appear in some judicial tribunal and show cause why his property shall not be taken for public use without compensation would be a

mockery of justice. Due process of law as applied to judicial proceedings instituted for the taking of private property for public use means, therefore, such process as recognizes the right of the owner to be compensated if his property be wrested from him and transferred to the public. The mere form of the proceeding instituted against the owner, even if he be admitted to defend, can not convert the process used into due process of law, if the necessary result be to deprive him of his property without compensation."

See also, *Fayerweather* v. *Ritch,* 195 U. S. 276, 297, 298, 25 S. Ct. 58, 49 L. Ed. 193, 209.

 The language in Code, section 4374, that "the court shall make such distribution of such money as to it may seem right, having due regard to the interest of all persons therein," of course does not authorize an arbitrary distribution of the fund. It means that the fund must be distributed as to the court may seem proper, giving due regard to the rights of the parties as fixed by law or by contract.

 We think, therefore, the lower court erred in holding that, irrespective of the terms of the bonds and of the mortgage securing the same, the condemnation proceedings effected an acceleration of the maturity of the bonds and deprived the bondholders of the right to interest after April 30, 1938, and the right to the call premium provided for in the bonds and in the mortgage.

We must look then to the terms of the contract between the parties, as embodied in the bonds and the mortgage, in order to determine their rights. The material provisions of the bonds are as follows:

"First Mortgage Twenty-Five Year Five Per Cent.

Gold Bond.

Series A

Due July 1, 1950

"No.......... ·$..............

"Roanoke Water Works Company (hereinafter called the 'Company') for value received hereby promises to pay on the first day of July, 1950 (unless this bond be sooner redeemed as hereinafter provided), to bearer or, if registered, to the registered owner of this bond, at the principal office of Chatham Phenix National Bank and Trust Company, in the Borough of Manhattan in The City of New York, the sum of ................................. Dollars ($........), * * * , and to pay at said office interest thereon from July 1, 1925, at the rate of five per cent. per annum, semi-annually in like gold coin on January 1st and July 1st in each year, upon presentation and surrender of the coupons hereto annexed as they severally mature and until payment of said principal sum.

> \* \* \* \* \* \* \*

"This bond is subject to redemption, at the election of the Company, as a whole or in part, on not less than thirty days prior notice given by publication in a daily newspaper of general circulation in the Borough of Manhattan in The City of New York, and otherwise as provided in said Indenture, at One hundred and five per cent. (105%) of the principal amount hereof, plus accrued interest, on any interest date prior to and including July 1, 1926, and on any interest date thereafter at a price determined by subtracting from 105% of the principal amount hereof plus accrued interest, one-fifth of one per cent. (1/5 of 1%) of the principal amount hereof, for each year or part thereof, which shall have elapsed since July 1, 1926."

It will be observed that this is a promise to pay, unconditionally in all respects save one, namely, "unless this bond be sooner redeemed as hereinafter provided." There is no provision in the bonds that the maturity date is to be accelerated, or that interest is to cease upon condemnation of the mortgaged property. Nor is there any such provision in the mortgage. If the parties had intended that the condemnation of the mortgaged property would effect an acceleration of the maturity of the bonds they would have

so stated. One simple sentence would have accomplished that result.

While it is true that the right of redemption of the bonds is optional with the mortgagor and it can not be compelled to redeem them prior to maturity, neither can the bondholders be compelled to accept payment of the principal of their obligations before maturity.

A similar situation was before the court in *Harnickell* v. *Omaha Water Company*, 146 App. Div. 693, 131 N. Y. S. 489 (affirmed on opinion below, 208 N. Y. 520, 101 N. E. 1104).

In 1880 the city of Omaha, Nebraska, provided by ordinance that any corporation which would construct and maintain a waterworks for the purpose of supplying the city with water should have rights of way over the city streets for its mains and a contract for furnishing the city with water for twenty-five years. This right was to be awarded to the lowest responsible bidder. The ordinance contained this provision: "The city of Omaha shall have the right at any time after the expiration of twenty years to purchase said waterworks at an appraised valuation, which shall be ascertained by the estimate of three engineers, one to be selected by the city council, one by the waterworks company, and these two to select the third: Provided, that nothing shall be paid for the unexpired franchise of said company."

The contract for the water supply was awarded to Lott, whose assigns completed the work which was accepted by the city. Through various conveyances the Omaha Water Company acquired the rights and franchises of Lott.

On March 2, 1903, the city of Omaha elected to purchase this system of waterworks under the terms of the above ordinance. The three appraisers were appointed and valued the system at more than $6,000,000 as of July 7, 1906.

In the meantime the water company had executed and delivered two mortgages on the property, under which bonds had been issued and were then outstanding in the amount of $4,805,000. The bonds contained this provision: "This

bond is redeemable at any time by said water company at 105 per cent. and accrued interest as provided in said mortgage."

The water company claimed that the sale of the system to the city effected a foreclosure of the mortgage and an acceleration of the maturity of the bonds. Therefore, it proposed to pay to the bondholders the par value of the bonds plus accrued interest.

Harnickell, a bondholder, claimed that the water company could not lawfully require him to accept anything less than 105% and accrued interest for his bonds, through redemption thereof, except upon the maturity of the bonds by their terms on July 1, 1916. The trustees under the two mortgages took the same position.

In overruling the contention of the water company and sustaining that of the bondholders, the court said (131 N. Y. S. at page 494): "In *Lisman* v. *Michigan Peninsular Car Co.,* 50 App. Div. 311, 63 N. Y. S. 999, where a similar clause in a corporate mortgage was under consideration, this court said:

" ' * * * When all of the provisions of the mortgage are thus read and construed together, it is clear that it was never intended to give to the mortgagor the right by its own act to pay the principal of the bonds in advance of the time specified in them when the same would mature. Any other construction would not only be unreasonable and unfair to the bondholders, but contrary to the express provisions of the mortgage. * * * The bondholders have a right to insist that defendant shall carry out its contract; that it shall pay its bonds when it agreed to, and not before; and that in the meantime the interest shall be paid at the times stipulated. The recent case of *Missouri, K. & T. Ry. Co.* v. *Union Trust Co.,* 156 N. Y. 592, 51 N. E. 309, is in point. Judge Vann, delivering the opinon of the court in that case, said: "The outstanding bondholders have a right to receive their debt only as provided by the contract. That right is as sacred as to receive it at all. The obligation of the debtor is to pay the principal when it becomes due, and

he has no right to compel the creditor to accept payment until it becomes due."'

"There is a precise provision in this mortgage under which the mortgagor can pay the mortgage debt before it is due. It is expressly provided that it may at any time redeem any of the bonds at 105 per cent. and accrued interest. We think the clear meaning of the whole instrument is that the company has promised to pay the bonds according to their terms at the due date expressed therein; that if it desires to pay them off prior to the time so fixed it can do so, and can only do so, upon the terms expressed in the mortgage, at 105 per cent. and interest. That is a matter over which the company has control."

While this is a decision of an intermediate appellate court it was unanimously affirmed "on opinion of Clarke, J., below," by the highest court of that State (208 N. Y. 520, 101 N. E. 1104).

We have not been cited to any precedent nor have we been able to find any supporting the contention of the Water Company that it is entitled under the facts stated to compel the bondholders to accept the face value of their unmatured bonds with accrued interest to April 30, 1938.

We think that the reasoning of the New York court applies to the facts before us; that the outstanding bondholders have the right to insist upon the Water Company's paying the debt in accordance with the terms of the bonds; and that they have the right to look to the fund in the hands of the lower court for the enforcement of their claims. This, of course, is subject to the Water Company's right of election to redeem the bonds upon the terms therein stated.

This distribution should be made, we think, direct to the bondholders by the court, which has, as we have seen, already distributed the major portion of the fund.

We come next to the final question to be determined, namely, what allowance, if any, should be made out of the fund to the Trustee by way of compensation for its services and reimbursement to it for counsel fees and other expenses incurred in connection with this litigation.

The Trustee and its counsel have performed substantial services for the outstanding bondholders in securing for them the payment of additional interest, or at least the call premium provided for in the bonds, under the terms of this decision. By the express terms of the mortgage the Water Company agrees to compensate the Trustee for such services, to reimburse it for counsel fees and expenses incurred, and secures the payment of these items by a lien on the trust estate. The mortgage provides:

"The Trustee shall be entitled to reasonable compensation for all services rendered by it in the execution of the trusts hereby created, and the Company agrees from time to time to pay such compensation * * * and to reimburse the Trustee and save it harmless against any and all liability and expenses, including counsel fees, which it may at any time incur hereunder; and the charges and expenses of the Trustee and of its counsel and all liability by it so incurred shall be secured by a lien on the property subject to the lien of this Indenture prior to the lien of this Indenture, and, if the Company shall fail, neglect or delay to pay the same promptly, they shall be paid from and out of any funds in the hands of the Trustee and/or from and out of the trust estate prior to any payment therefrom to or upon the order of the Company or of or on account of any of the Bonds or coupons."

The situation here is quite different from that in *Dillard* v. *Serpell*, 138 Va. 694, 123 S. E. 343. There this court declined to allow the trustee payment for services rendered the bondholders in asserting and maintaining the priority of their lien in litigation in the federal court. But in that case there was no provision in the deed of trust providing for compensation to the trustee other than the usual provision for the payment of commissions upon the foreclosure of the deed of trust.

In the instant case the Water Company has expressly agreed to reasonably compensate the Trustee for its services and to reimburse it for reasonable counsel fees and other expenses incurred, and has made these items a charge

on the trust estate. There is no reason why the Water Company should be released from these terms of its contract.

We think, therefore, that the lower court should make a reasonable allowance for these items. This allowance should be measured by the results which the Trustee and its counsel have obtained for the holders of the unpaid bonds of $180,300, that is, the difference between what these bondholders are entitled to receive under the orders appealed from and what they will receive under the judgment of this court.

No allowance should be made, we think, to the Trustee or its counsel on behalf of the holders of those bonds which have been paid and satisfied. These bondholders, representing themselves, secured the payment of their claims upon terms which were entirely satisfactory to them and have received no benefits from the efforts of the Trustee and its counsel.

The orders appealed from are, therefore, affirmed in part and reversed in part and the cause is remanded for further proceedings in accordance with the views herein expressed. The Trustee, acting on behalf of itself and the outstanding bondholders, having substantially prevailed in this proceeding should recover its costs.

*Affirmed in part.*
*Reversed in part.*