# Richmond

## Lula B. Wallace v. Maxwell G. Wallace and Others.

March 11, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Spratley, JJ.

The opinion states the case.

*W. W. Butzner* and *M. Carter Hall*, for the appellant.

*Willis & Willis*, for the appellees.

Holt, J., delivered the opinion of the court.

On January 27, 1916, Judge A. W. Wallace, now dead, by deed of that date, established a trust fund, in which he conveyed to H. Lewis Wallace, A. Hansford Wallace, Maxwell G. Wallace and Charles Wallace, in trust, numerous articles of personal property, bonds, stocks and evidences of indebtedness, including eighty-nine shares of National Bank of Fredericksburg stock. We are called upon to construe that portion of the deed which deals with this item.

The bill asking for this construction is filed by H. Lewis Wallace, Charles Wallace and Maxwell G. Wallace, trustees. S. G. Wallace and Lula B. Wallace are made defendants, both of whom have answered. The prayer of the bill is "that the court decree to whom the said dividends from the bank stock be paid and for such other and further relief, both general and special as to equity may seem meet, and the nature of the case may require."

By the eleventh clause of this deed, the trustees were directed to dispose "of the rest of the property securities as conveyed in this deed as follows, subject to conditions hereinafter set out." Afterwards appears this paragraph, the construction of which is in issue here:

"But the entire eleventh clause of this deed together with everything written above thereafter shall be subject to the following conditions, That the Eighty-Nine shares of Stock of the National Bank of Fredericksburg, Va., conveyed by this deed shall be held by said Trustees and disposed of as follows: One-half of said Stock is to be transferred to H. Lewis Wallace for life with power after the

death of said A. W. Wallace to will the same, and if he should make no such will then to Maxwell G. Wallace. The other half of said Stock to be transferred to A. Hansford Wallace and Samuel G. Wallace, (brothers jointly for their joint lives or that of the survivor with power to will the same after the death of A. W. Wallace, and after the death of both of their wives, and on the failure to make such will or wills their said one-half is to go to H. Lewis Wallace and Maxwell G. Wallace, Charles Wallace absolutely. On failure of any of the trusts of this deed such interests shall go to H. Lewis Wallace and Maxwell G. Wallace absolutely."

After the death of Judge Wallace and at the request of the trustees the National Bank of Fredericksburg issued three separate certificates of stock, one for 44½ shares in the name of H. Lewis Wallace, one for 22¼ shares in the name of A. Hansford Wallace, and one for 22¼ shares in the name of Samuel G. Wallace, and said certificates of stock were delivered by said trustees to the respective parties in whose names the stock was issued.

Subsequent to the death of said A. W. Wallace, H. Lewis Wallace has received the dividends from the 44½ shares of said stock standing in his name, S. G. Wallace has received the dividends from the 22¼ shares of stock standing in his name, and A. Hansford Wallace received the dividends from the 22¼ shares of stock standing in his name up until the date of his death.

Judge Wallace died on October 23, 1927, and A. Hansford Wallace died on March 13, 1934. In his will of date September 10, 1915, the latter left his entire estate to his wife, Lula B. Wallace. To that will was afterwards attached this codicil:

"I hereby bequeath my one-half joint life interest in forty-four and one-half (44½) shares of stock of the National Bank of Fredericksburg, conveyed to me and S. G. Wallace, jointly by deed of my uncle, A. W. Wallace, bearing date of January 27th, 1916, and of record in the Clerk's Office of the Corporation Court, Deed Book P

after the death of my wife, Lula B. Wallace, to my cousin, Charles Wallace, son of the late J. Stansbury Wallace;

"I make this bequest pursuant to the terms of the aforesaid deed and by virtue of the power vested in me by said deed to dispose of my said interest in said Bank stock by will."

Soon thereafter, at the request of the bank and possibly upon the suggestion of Samuel G. Wallace, these two stock certificates for twenty-two and a quarter shares of stock were delivered to it. At that time H. Lewis Wallace advised Mrs. Lula B. Wallace that such delivery would not affect her rights. After this delivery and on April 23, 1934, Mrs. Lula B. Wallace and Samuel G. Wallace received copies of a joint letter from the bank telling them that "The stock upon the death of A. W. Wallace should have been made out to 'Hansford and Sam, jointly and for their joint lives and for that of the survivor' pursuant to terms of trust deed of January 1916 of A. W. Wallace to H. Lewis, A. Hansford, Maxwell G. and Charles Wallace, trustees, for the whole 44½ shares."

These two certificates were cancelled and a new certificate for forty-four and one-half shares was issued to "A. Hansford Wallace and Samuel G. Wallace, jointly and for their joint lives and that of the survivor according to the terms of trust deed of A. W. Wallace to Maxwell G. Wallace, H. Lewis Wallace, A. Hansford Wallace and Charles Wallace, trustees, which trust deed is made a part hereof as if fully spread out herein."

The bank was then of opinion that this should have been done in the first instance and so advised these holders.

Mrs. Wallace called the attention of H. Lewis Wallace to the fact that the certificate of stock issued was not issued in precise accordance with the language of said trust deed. To that contention he replied by letter and said:

"The bank certificate of stock is now in the name of 'A. Hansford Wallace and Samuel G. Wallace, brothers jointly for their joint lives or that of the survivor, according to terms of trust deed of A. W. Wallace to H.

Lewis Wallace, A. Hansford Wallace, Maxwell G. Wallace and Charles Wallace, Trustees, which deed is made a part hereof as if spread out in full herein, which deed is dated January 27, 1916.'"

No dividends have been paid to Mrs. Wallace on this stock although they have accrued and have been declared but are held by the bank until their ownership can be ascertained. No evidence has been taken, and so this cause comes on to be heard upon the bill and separate answers of Samuel G. Wallace and Lula B. Wallace, together with exhibits.

Samuel G. Wallace contends that said bequests vested in him and in A. Hansford Wallace a joint estate in this stock and that he, as survivor, is entitled to all dividends which have accrued and which may accrue thereon from and after the death of A. Hansford Wallace for and during the period of his natural life.

Mrs. Wallace in her answer contends that "the tenor of the clauses disposing of said stock indicates, by necessary implication, an understanding and intention on the part of the grantor that the estate jointly granted to A. Hansford Wallace and Samuel G. Wallace should have the attributes of a tenancy in common, whereby the wives of A. Hansford Wallace and Samuel G. Wallace should inherit the income from their husbands' share upon the death of either one of them and enjoy the same so long as either of said wives should be alive."

And in her petition for appeal her present claims are thus stated:

"In praying for a true construction of this trust deed, petitioner claimed in the court below that the language used by Judge Wallace, with respect to the disposition of said bank stock, indicated, by necessary implication and understanding an intention on his part that the estate jointly created to A. Hansford Wallace and Samuel G. Wallace should have the attributes of a tenancy in common, whereby the wives of A. Hansford Wallace and Samuel G.

Wallace should inherit the income from their husbands' joint stock after the death of either one of them and enjoy the same so long as either of said wives should be alive.

"As an alternative to this construction of the disposing clauses, petitioner now contends that the language used was intended to create a life estate in co-tenancy in A. Hansford Wallace and Samuel G. Wallace, to be measured by the life of one of the two brothers who lived the longest, whereby petitioner, Lula B. Wallace, as personal representative of A. Hansford Wallace, is entitled to the income from 22¼ shares of stock of the National Bank of Fredericksburg so long as Samuel G. Wallace lives."

The chancellor below was of opinion. that it would be premature to undertake any ultimate disposition of this stock or its proceeds. No one can undertake to say what the will of Samuel G. Wallace will be. Indeed he may make none. Moreover it appears that Mrs. Sue Wallace, who was his wife when the trust deed was executed, was divorced in 1919. Mr. Wallace has since remarried, his present wife being Julia H. Wallace. Neither of these parties is before the court.

Whatever may be the reasons therefor, the decree of the court below is clear cut and limited. Its provision is that "the dividends from 44½ shares of stock of The National Bank of Fredericksburg, Virginia, should be paid over to A. Hansford Wallace and Samuel G. Wallace, brothers jointly for their joint lives, and after the death of either, to the survivor for his life, and that A. Hansford Wallace having departed this life on March 13, 1934, Samuel G. Wallace, the survivor, is entitled to all the dividends from said 44½ shares of stock, from and after March 13, 1934, for and during the remainder of his life, the Court doth so decide, and doth adjudge, order and decree that, under the terms of the foregoing clause in said trust deed contained said 44½ shares of National Bank Stock be transferred to the name of Samuel G. Wallace, for and during his life, and

that said Samuel G. Wallace, survivor of his brother, A. Hansford Wallace, is entitled to all dividends on said 44½ shares of The National Bank Stock accruing or declared from March 13, 1934, for the remainder of the life of the said Samuel G. Wallace."

In undertaking to ascertain Judge Wallace's intention in the trust deed in judgment, these general rules are to be remembered:

"The primary consideration and rule of construction is to determine the intention of the testator from the language which he has used. If the meaning of that language is plain, the rule must be given effect accordingly. This rule is familiar and elementary, and to it all others are subordinate and subservient." *Penick's Ex'r* v. *Walker*, 125 Va. 274, 99 S. E. 559, 560; *Domestic & Foreign Missionary Society* v. *Crippled Children's Hospital*, 163 Va. 114, 176 S. E. 193.

"The primary significance of words should ordinarily attach and does attach, unless it is manifest from the will itself that other definitions are intended. Weight and meaning must be given to every word used if they make any sense at all. None are to be deleted and none added, for men make their own wills, nor should we search out obscure or recondite possibilities in simple words. Falstaff's babbling of green fields has sometimes led meticulous critics to untenable conclusions." *Rady* v. *Staiars*, 160 Va. 373, 168 S. E. 452.

"In the construction of ambiguous expressions the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words, and in ascertaining the meaning in which the testator used them." *Smith* v. *Bell*, 6 Pet. 68, 74, 75, 8 L. Ed. 322; *Colton* v. *Colton*, 127 U. S. 300, 8 S. Ct. 1164, 32 L. Ed. 138; Article by Prof. Graves, 14th Va. Law Reg. 913.

■ "And in order the better to comprehend the scheme which the testator had in his mind for the disposition of his estate, the judicial expositor is permitted to place himself, figuratively speaking, in the very shoes of the person whose will he is called on to construe, * * *." *Hatcher* v. *Hatcher*, 80 Va. 169, 171.

■ "The effect of language used in a deed is to be gathered from a careful examination of the whole deed, and not merely of disjoined parts, so as to give effect to the whole if possible." Michie's Digest, vol. 3, p. 552, cases cited.

■ "It is a settled rule of construction, both in deeds and wills, that if an estate is conveyed, or interest given, or a benefit bestowed, in one part of the instrument, by clear, unambiguous and explicit words, such estate, interest, or benefit is not diminished or destroyed by words in another part of the instrument, unless the terms which diminish or destroy the estate given be as clear and decisive as the terms by which it was given." Michie's Digest, vol. 3, p. 555, cases cited.

■ Contemporary constructions by those interested must be considered.

Those statutory provisions immediately important are found in the Code of 1919, sections 5159 and 5160. By section 5159, survivorship between joint tenants is abolished, subject, however, to that exception which appears in section 5160. It tells us that section 5159 does not apply "when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the other."

Survivorship between joint tenants was abolished in 1787 as an attribute of joint tenancy. Statutes 31st and 32nd, Hen. 8, 12 Hen. Stat. at Large, p. 349. This act did not apply to tenancies by entireties. *Thornton* v. *Thornton*, 3 Rand. (24 Va.) 179; *Norman's Ex'x* v. *Cunningham*, 5 Gratt. (46 Va.) 63. Survivorship between tenants by entireties was abolished as to estates of inheritance on July 1, 1850. Code, 1849, ch. 116, sections 18, 19. These

provisions were carried into the Code of 1887, sections 2430 and 2431. Section 2430, in the light of *Lockhart* v. *Vandyke*, 97 Va. 356, 33 S. E. 613, was amended by the addition of the words "before or after the vesting of estates."

The history of a statute in doubtful cases is interesting and valuable, but is of little help when its meaning in final form is plain, and it is plain in those provisions cited in the Code of 1919. Survivorship is not favored, but since one may lawfully dispose of his property as he sees fit, provisions for its application may lawfully be made.

Did Judge Wallace manifest a purpose in the language used, and if so, what was that purpose?

The disposition of this bank stock falls logically into two classes. First there is given an interest to A. Hansford Wallace and Samuel G. Wallace for their joint lives, or that of the survivor, after which additional provisions are made for its ultimate disposition.

Said stock was "to be transferred to A. Hansford Wallace and Samuel G. Wallace, brothers, jointly for their joint lives or that of the survivor." We are told that Judge Wallace was an experienced lawyer and a man of wide interests. This is true. We may assume that he knew a simple joint gift would not be enough, and so to make his purpose plain and to make assurance doubly sure, he tells us that this was a gift for their joint lives or for that of the survivor. If we give to the words used their primary significance, there can be no doubt whatever as to the manifest purpose of this donor, and since this purpose is plain, it is not to be whittled away by conjectures or by possibilities.

We are told, however, that these wives take by necessary implication—that they "inherit the income from their husbands' joint stock after the death of either one of them and enjoy the same so long as either of said wives should be alive," or "that the language used was intended to create a life estate in co-tenancy in A. Hansford Wallace and Samuel G. Wallace to be measured by the

life of the one of the two brothers who lived the longest, whereby petitioner, Lula B. Wallace, as personal representative of A. Hansford Wallace, is entitled to the income from 22¼ shares of stock of the National Bank of Fredericksburg so long as Samuel G. Wallace lives."

In the construction of a doubtful provision, it is not easy to see how two constructions, which lead to different results, are by implication necessary. Moreover there is another construction which might be given to this deed, which, instead of doing violence to any of these provisions, follows them literally. Neither A. Hansford Wallace nor Samuel G. Wallace could make any testamentary disposition which took effect during the life of either wife. They could not take by will and necessarily they could not take as distributees by inheritance. Why Judge Wallace intended that they should not take, we do not know, and it is not necessary that we should know. Such provisions are lawful and that is enough.

What extrinsic facts fortify these conclusions? Judge Wallace, as appears from this deed, was a man of clannish instincts, and there is nothing unreasonable in the fact that he preferred his nephews rather than their wives. Moreover all parties lived in Fredericksburg, and this bank was located there. Judge Wallace was, of course, intimately familiar with stocks and stock certificates, and had there been no survivorship in his mind, it was to have been expected that he would give to each of these beneficiaries a definite stock interest, represented by separate stock certificates.

It is true that separate certificates were at first issued by the bank and at the instance of the trustees, but the matters now before us were then of no present interest. They did become of moment upon the death of A. Hansford Wallace, and it was then that the two separate certificates were called in and a joint certificate issued.

We have had occasion quite recently to deal with Code,

section 5160. In *Burroughs* v. *Gorman*, 166 Va. 58, 184 S. E. 174, we upheld the right of survivorship.

In *Rady* v. *Staiars*, *supra*, appears this provision in a testator's will: "What I have at death now is yours and George * * *. If one should die before the other then to the one living you or George * * *." This gave a joint estate with survivorship.

In *Conner* v. *Everhart*, 160 Va. 544, 169 S. E. 857, it appears that the testator left his farm in trust, rents to be paid to testator's son during the son's life, or until son's creditors should seek to subject them; then to maintenance of son's wife and children until death of son; on death of son, wife surviving, to the wife during her life or until remarriage; on such death or remarriage, trust to terminate and farm to pass to son's children then living in fee.

Creditors sought to subject the son's interest; it was held that action terminated his interest but that his wife and children took a joint estate.

In *Allen* v. *Parkey*, 154 Va. 739, 149 S. E. 615, 154 S. E. 919, under review was a deed which conveyed a tract of land to a husband and wife with covenant of general warranty. It further provided that should the husband survive his wife, the property should be his to dispose of as he saw proper, and there was a similar provision in the event the wife should survive her husband. It was held that here was created a joint estate with the right of survivorship. See also, *Hofheimer* v. *Seaboard Citizens' National Bank*, 154 Va. 392, 153 S. E. 656; Id., 154 Va. 896, 156 S. E. 581; *Drake* v. *Blythe*, 108 Va. 38, 60 S. E. 632.

Without further citations, we think in Virginia that the right of survivorship exists whenever it is manifest that a grantor or testator so desired and makes plain his purpose. Indeed the statute in express terms so declares.

In *Gardner* v. *Gardner*, 152 Va. 677, 148 S. E. 781, 782, a father gave to his three sons "all of my personal property in equal shares, share and share alike, to them and their heirs forever." These sons took as tenants in common; manifestly no survivorship was intended.

In *Armistead's Ex'rs v. Hartt,* 97 Va. 316, 33 S. E. 616, the testator gave to his children his real estate, "share and share alike." These children were joint owners but were never joint tenants. See *Rady v. Staiars, supra.*

In *American National Bank v. Taylor,* 112 Va. 1, 70 S. E. 534, 535, Ann. Cas. 1912D, 40, Andrew J. Taylor conveyed a parcel of land to his son, Walter, reserving to himself and to his wife the right to live upon and use the same "for and during the period of their natural lives." It was said, and rightly, that there was no survivorship.

A joint estate or one to donees, share and share alike, etc., is not enough. The donor or testator must make plain his purpose, but when that purpose has been made plain and it is manifest that he intended survivorship should follow, we do what might have been expected. We give effect to this intention. No particular words are necessary; it is only necessary that his purpose be made "manifest."

As we have seen, the chancellor limited his decision; he deals only with dividends on this stock which have accrued or which may accrue during .the lifetime of Samuel G. Wallace. He did not deal with its ultimate disposition, and, of course, we do not.

There is no error in the decree appealed from, and it must be affirmed.

*Affirmed.*