[No. 26860-1-I.   Division One.   April 22, 1991.]

ANNE VENABLES, *Appellant,* v. SEATTLE–FIRST NATIONAL BANK, *Respondent.*

*Jon Hongladarom* and *Oles, Morrison & Rinker,* for appellant.

*Michael Rayton, Robert Curran, Richard Lentini,* and *Ryan, Swanson & Cleveland,* for respondent Seattle–First National Bank.

*Walter Yund, Jr.,* for intervenors Baillargeon.

BAKER, J.—Anne Venables appeals a summary judgment order which approved Seattle–First National Bank's allocation of charges against the income and principal of a testamentary trust. We affirm.

Venables is one of two remaindermen of a testamentary trust created by the will of her father, John Baillargeon. Her mother, Margret Ames Baillargeon, is the income beneficiary. Venables sued the trustee, Seattle–First National Bank (hereinafter Seafirst), questioning the allocation of charges against trust principal. Her mother and brother (the second remainderman) intervened as defendants and supported Seafirst's position. (Hereinafter, the brother will be referred to as John and the father as Baillargeon.)

Baillargeon died in 1952. His will was executed in 1936. In providing for his children, Baillargeon left "their care and support entirely within the hands of my said wife during her lifetime" and left them each $1. He then provided

that the shares of his solely owned corporation be placed in trust with Margret as trustee and income beneficiary. Margret was given the power to sell the stock. If she did sell the stock, Baillargeon directed that the proceeds were to be placed in a trust administered by Seafirst as successor trustee with income going to Margret. Paragraph Fourth of the will states:

> I direct that the income arising from said proceeds, after deduction for the costs and expenses of the succeeding trustee, be paid by the succeeding trustee to my said wife during her lifetime as was the income arising from said shares of J. A. Baillargeon & Company stock.

The will further provided in the event of a sale of the shares (or upon Margret's death) that Seafirst administer the trust in the same way it administered another trust created in Paragraph Sixth of the will "except that the income from said property, less the costs and expenses of the succeeding trustee, shall be paid by said succeeding trustee to my said wife, individually and not as a trustee, during her lifetime."

Paragraph Sixth gave the remainder of the estate to Margret and provided for the creation of a second trust, in the event of Margret's death, with Seafirst as trustee and with Venables and John as the income beneficiaries. Seafirst was directed to "defray the reasonable costs of this trust including reasonable compensation to said trustee." Further, Paragraph Sixth provided that the trustee would not be liable for error except for dishonesty, willful breach of the trust or gross negligence.

On January 1, 1982, Margret sold the company stock, and Seafirst became trustee. Since then, Seafirst has charged one–half of its fees to trust income and one–half to principal. Seafirst has charged the following items entirely against trust principal: capital gains taxes and attorney's fees on the sale of the company stock; capital gains taxes on sale of other securities; brokerage commissions; and attorney fees and costs from this litigation.

In the case below, Seafirst and Venables submitted an agreed statement of facts on cross motions for summary judgment. The trial court upheld Seafirst's allocation of charges, granted its motion for summary judgment, and denied Venables' motion. The bank was awarded its attorney fees, to be charged equally against trust principal and income. The individual parties were ordered to bear their own costs and attorney fees.

I

Venables contends the trust instrument unambiguously directs deduction of all trust costs and expenses from income. Seafirst (hereinafter including Margret and John unless otherwise noted) contends that the trust instrument does not specifically direct allocation of costs and expenses in a manner contrary to the Washington Principal and Income Act, and thus the act controls.

The principal and income act, effective January 1, 1972, was intended to provide uniformity in the law relating to allocation of receipts and expenses among income beneficiaries and remaindermen. Laws of 1971, ch. 74, p. 164; § 19, p. 173. The act applies to any trust whether established before or after January 1, 1972, "[e]xcept as specifically provided in the trust instrument or the will or in this chapter". RCW 11.104.900.[1] *See also* RCW 11.97.010.

The act provides:

(1) A trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen. A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expenditure is charged to income or principal or partly to each:

(a) In accordance with the terms of the trust instrument, notwithstanding contrary provisions of this chapter;

---

[1]Venables questions whether the principal and income act applies here, where the testator died in 1952, citing *Benhart v. Gorham*, 14 Wn. App. 723, 544 P.2d 141, *review denied*, 87 Wn.2d 1001 (1976). The court in *Benhart* rejected application of the principal and income act, effective in 1972, to a 1966 instrument, saying the act applied prospectively only. In light of the clear language of RCW 11.104.900, we disagree with that holding.

(b) In the absence of any contrary terms of the trust instrument, in accordance with the provisions of this chapter[.] RCW 11.104.020.

The act further provides for allocation of certain costs and expenses to income and other costs and expenses to principal. RCW 11.104.130.

A prefatory note to the 1962 Uniform Principal and Income Act, which was substantially adopted by Washington, noted that the objective of the act is "simplicity and convenience of administration of the estate". Prefatory Note, Uniform Principal and Income Act, 7B U.L.A. 146 (1985). Further,

> [t]he Act, therefore, sets forth simple and workable rules of administration which are believed to be consistent with the wishes of settlors upon the subject treated unless the settlor specifically provides for a different treatment in his own trust instrument.

7B U.L.A. at 147.

■ Washington case law in general requires that courts construe the language of a will by giving effect to the testator's intent as determined from the four corners of the instrument and in light of the entire instrument. *In re Estate of Fleischman*, 54 Wn. App. 795, 796–97, 776 P.2d 684, *review denied*, 113 Wn.2d 1025 (1989). In this context, however, we start with the statutory assumption that trustors intend trust costs and expenses to be allocated as prescribed in the principal and income act unless the trust instrument specifically states otherwise. RCW 11.104.900.[2]

In the case before us, it is clear that the primary intent of the trustor was to establish income for his surviving spouse. His intent regarding allocation of trust expenses is not so clear. The phrase "costs and expenses of the succeeding trustee" is ambiguous as to which specific costs and expenses the trustor had in mind. *See, e.g., Kumberg v. Kumberg*, 5 Kan. App. 2d 640, 623 P.2d 510, 511 (1980)

---

[2]We do not imply any necessity for a trustor to specifically reference the principal and income act in the trust document. RCW 11.97.010.

(phrase "net profits" from gas and oil royalties insufficiently clear and specific to control over provisions of principal and income act). Moreover, if the sometimes substantial costs and expenses incurred in the administration of this trust were all charged against trust income, the flow of income to the income beneficiary would be severely disrupted or even stopped.

*Templeton v. Peoples Nat'l Bank,* 106 Wn.2d 304, 722 P.2d 63 (1986), a case relied upon by appellant, is factually distinguishable. There, the trustor contractually created a trust to which his annuity payments would be made upon his death, with his wife as income beneficiary and his two children as remaindermen. The income beneficiary sued the trustee when it took in over $81,000 in a 39–month period and disbursed less than $20,000 to her as income.

The Supreme Court emphasized the necessity for deriving the trustor's intent from the instrument and following his express intent. *Templeton,* 106 Wn.2d at 308–09. The court found the statutory designation of annuities as income inapplicable because the trustor had explicitly given the bank the discretionary power to determine what was income and what was principal. The court also found the principal and income act provisions cited by the plaintiff inapplicable because the trust was created by contract rather than by will. *Templeton,* 106 Wn.2d at 310–11.

The statements in the subject instrument do not rise to the level of specificity utilized by the trustor in *Templeton,* nor to the level of specificity required by the principal and income act.

The Michigan Supreme Court construed a trust provision similar to the one in this case and found it not sufficiently contrary to the Michigan Principal and Income Act[3] to control the allocation of taxes and expenses. *Donovan v.*

---

[3] Substantially similar to the Washington statute.

*National Bank of Detroit,* 384 Mich. 595, 185 N.W.2d 354 (1971). The trust provision directed that the trustee

shall collect the income from the property comprising the trust estate, pay all taxes and incidental expenses of the trust, and shall remit the net income derived therefrom, in monthly or other convenient installments, to my grandson[.]

*Donovan,* at 602 (Black, J., dissenting). The court acknowledged that the trust language suggested taxes and expenses should be paid out of gross income. Nevertheless, the court pointed out: "the conclusion that the testatrix intended some taxes and some expenses to be deducted from income does not negative the possibility that other taxes and other expenses were intended to be charged to principal." *Donovan,* at 599.

We note that the trust directions in *Donovan* were more specific than in the subject will. We also note that the *Donovan* court emphasized, as do we, comments by the National Conference of Commissioners on Uniform State Laws urging conformity with the statute unless an instrument specifically provides otherwise. *See also In re Estate of Campbell,* 46 Hawaii 475, 382 P.2d 920, 969–70 (1963) (direction to keep trust corpus intact without "a direction for payment of all charges out of income or other specific provision" did not control over ordinary accounting principles under which certain charges are made against the corpus).

Thus, because the trust instrument lacks the specificity to identify and allocate adequately the variety of costs and expenses involved in administering the trust, the Washington Principal and Income Act controls.

II

Next, we must review the allocation of costs and expenses made by Seafirst as compared with the statutory requirements.

In doing so, it appears that Seafirst has properly allocated its costs and expenses to conform with the requirements of RCW 11.104.130.[4] RCW 11.104.130(1)(e) and (3)(a) authorize allocation of trustee's fees based on percentage of income and principal to be deducted one–half to income and one–half to principal as was done by Seafirst; RCW 11.104.130(3)(d) authorizes allocation of capital gains taxes to principal as was done by Seafirst; and RCW 11.104.130(3)(b) authorizes allocation of the cost of investing and reinvesting principal to principal, as Seafirst did here for brokerage commissions.

Because we reject appellant's claims regarding proper allocation of costs and expenses, we do not reach the contention that some of Venables' claims are barred by the statute of limitations.

### III

Finally, Venables contends that Seafirst should bear its own legal fees and costs and should pay Venables' as well. Seafirst contends its legal fees and costs should be charged to the trust. John and Margret (without specifically addressing legal fees on appeal) contend Venables should reimburse the trust principal for the attorneys' fees and costs of Seafirst, Margret, and John.

As to the attorney's fees and costs in superior court, RCW 11.104.130(3)(a) provides attorney's fees primarily concerning principal shall be charged against principal. RCW 11.104.130(3)(b) provides that "unless the court directs otherwise, expenses incurred in maintaining or defending any action to construe the trust" shall be charged against principal. RCW 11.104.130(1)(d) provides attorney's fees shall be charged against income if the issue primarily

---

[4]One question arises as to the acceptance fee of $2,000 allocated one–half to income and one–half to principal. RCW 11.104.130(3)(a) provides that "trustee's compensation computed on principal as an acceptance, distribution, or termination fee" shall be charged against principal. Because we have no information as to whether this acceptance fee was computed based on principal, and because Venables only argues that all fees should be deducted from income, we do not address whether this fee should have been entirely deducted from principal.

concerns the income interest "unless the court directs otherwise".

█ The latter phrase makes the allocation of fees a discretionary decision for the trial court. *Templeton,* 106 Wn.2d at 311. Here, the trial court ordered that Seafirst charge its legal fees one–half against principal and one–half against income and that Venables, John, and Margret bear their own attorney's fees. We find no abuse of discretion.

As to attorney's fees on appeal, Seafirst may charge the legal expenses of the appeal against principal after the procedure established by RAP 18.1 has been followed. Other parties will bear their own costs on appeal.

The judgment of the trial court is affirmed.

SCHOLFIELD and KENNEDY, JJ., concur.