Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims,
          JJ., and Koontz, S.J.

RIVERSIDE HEALTHCARE
ASSOCIATION, INC., ET AL.
                                        OPINION BY
v.  Record No. 100108        CHIEF JUSTICE CYNTHIA D. KINSER
                                       April 21, 2011
SARAH E. FORBES, FORMER TRUSTEE
OF THE SARAH E. FORBES RIVERSIDE
TRUST, ET AL.

         FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Timothy S. Fisher, Judge

     The General Assembly enacted the Uniform Principal and

Income Act, Code §§ 55-277.1 through -277.33 (the UPIA), in

1999.  1999 Acts ch. 975.  Its purpose generally is "to provide

uniformity in the law relating to allocation of receipts and

expenses among income beneficiaries and remaindermen."  Venables

v. Seattle-First Nat'l Bank, 808 P.2d 769, 771 (Wash. Ct. App.

1991); accord Briel v. Mody, 186 A.2d 314, 315 (N.J. Ch. 1962);

see Kumberg v. Kumberg, 659 P.2d 823, 827-28 (Kan. 1983).  With

regard to the allocation of receipts and disbursement to or

between principal and income, the drafters of the 2008

Amendments to the Revised Uniform Principal and Income Act

acknowledged, however, that the act provides only "default rules

and that provisions in the terms of the trust are paramount."

U.P.I.A. § 103 cmt. (2008).

     In this appeal, the questions are whether the UPIA

provision regarding the allocation of compensation from an

eminent domain proceeding governs or whether the grantor of a trust directed the allocation of such compensation. We also address whether the remainder beneficiary stated a cause of action for an equitable accounting pursuant to Code § 8.01-31. Because we conclude that the grantor did allocate such compensation to income, we will affirm the portion of the circuit court's judgment granting partial summary judgment in favor of the trustee. However, because we conclude that the circuit court erred in sustaining the trustee's demurrer to the claim for an equitable accounting, we will reverse that portion of the circuit court's judgment.

## I. RELEVANT FACTS AND PROCEEDINGS

Sarah E. Forbes, as Grantor and Trustee, executed a document titled the "DECLARATION OF INTER VIVOS TRUST AGREEMENT KNOWN AS 'THE SARAH E. FORBES RIVERSIDE TRUST'" (the Trust). The Grantor conveyed to the Trustee a certain parcel of real estate in the City of Newport News consisting of approximately seven acres. The Trust provisions prohibit the Trustee from selling "the real property of this [T]rust . . . except to a condemnor pursuant to a notice of condemnation." The Trust provisions further direct the Trustee to "distribute all net income generated by the [T]rust and the [T]rust property unto the Grantor . . . during the lifetime of the Grantor." Unless sooner terminated, the Trust will end upon the Grantor's death,

2

and, subject to certain conditions not relevant to this appeal, the principal of the Trust will be distributed to Riverside Healthcare Association, Inc. (Riverside). The Trust provisions define the term "net income" as "all funds received from the rental of the [T]rust property and/or generated from or by the [T]rust property and/or any proceeds from the [T]rust property . . . LESS all funds paid by the Trustee" for certain enumerated expenses such as real estate taxes, insurance premiums, and repairs to the Trust property.

In 2008, the Commonwealth of Virginia acquired a portion of the Trust property pursuant to a certificate of take. See Code §§ 25.1-307, -308, -313, and -314. Because the Trustee and Riverside disagreed as to whether the compensation received in the eminent domain action should be allocated to principal or income, they entered into an escrow agreement directing escrow agents, Forbes and Molly E. Trant, to hold the condemnation compensation and to disburse such funds only in accordance with future directions from the Trustee and Riverside.

Subsequently, in an amended complaint, the Trustee sought declaratory relief against Riverside, asking, among other things, that the condemnation compensation be paid to the Trustee for distribution to the Grantor as income in accordance

3

with the terms of the Trust.[1]  Responding, Riverside asserted
that the condemnation compensation should be allocated as a
receipt of principal in accordance with the Trust provisions.
In a third amended counterclaim, Riverside also sought
declaratory relief against the Trustee on the same basis, in
addition to removal of Forbes as the Trustee and an equitable
accounting pursuant to Code § 8.01-31.[2]

The parties filed cross-motions for partial summary
judgment on the issue regarding the allocation of the
condemnation compensation as between principal or income.  The
Trustee argued that the plain meaning of the Trust term "net
income" dictates that such compensation be treated as "proceeds
from the [T]rust property."  Recognizing that the UPIA directs a
fiduciary to allocate to principal "[p]roceeds of property taken
by eminent domain," Code § 55-277.13(4), the Trustee stressed
that the UPIA, nevertheless, provides that a fiduciary, when
allocating receipts between principal and income, "[s]hall
administer a trust . . . in accordance with the terms of the
trust . . . even if there is a different provision in [the
UPIA]."  Code § 55-277.3(A)(1).  Riverside, however, contended
that the UPIA controls because the Trust provisions do not

---

[1] The Trustee also named the escrow agents and the Grantor
as defendants in the action seeking declaratory relief.

[2] The escrow agent, Trant, joined Riverside in its various
pleadings and they are together referred to as Riverside.

4

define the terms "income" and "principal" or direct how the compensation from an eminent domain action is to be allocated.

The circuit court granted partial summary judgment in favor of the Trustee. In a letter opinion incorporated in its order, the circuit court reasoned that because funds received from the rental of the Trust property are specifically included in the definition of the term "net income," "there simply is no question that money received from the condemnation proceeds[] fall in the category of 'and/or generated from or by the [T]rust property and/or any proceeds from the [T]rust property.' Further, because the condemnation compensation is included in "net income," as defined by the Trust, the court concluded that the UPIA rule on the allocation of the condemnation compensation between principal and income does not apply.

With regard to Riverside's request in its third amended counterclaim for an equitable accounting pursuant to Code § 8.01-31, the circuit court, in a separate letter opinion, concluded that Riverside is an entity that may request such an accounting under that statute. However, the court found it "unnecessary to grant the motion for an 'equitable accounting' under . . . Code § 8.01-31" on the ground that the court, during this litigation, previously had ordered compliance with the Trust provisions requiring the Trustee to provide "a statement showing the condition of the Trust and the receipts and

5

disbursements during the period covered thereby from the date of the creation of the Trust or from the date of the last previous statement furnished by the Trustee."  Thus, in its final order, the court sustained the Trustee's demurrer with regard to Riverside's claim for an equitable accounting as asserted in its third amended counterclaim.[3]  We awarded Riverside this appeal.

II. APPELLATE ISSUES AND STANDARD OF REVIEW

On appeal, Riverside assigns two errors.  It first claims the circuit court erred in finding that the compensation paid as a result of the condemnation of a portion of the Trust property was "an income receipt instead of a principal receipt."  It is undisputed that the Trust received compensation as a result of the eminent domain action.  To decide whether that condemnation compensation should be allocated as income or principal requires interpretation of both the Trust provisions and the relevant sections of the UPIA.  Such issues are questions of law, which we review de novo.  See Keener v. Keener, 278 Va. 435, 442, 682 S.E.2d 545, 548 (2009) ("[A]pplying the language of a written document to an undisputed fact [is] a pure question of law,

---

[3] Prior to the circuit court's issuance of its letter opinion addressing Riverside's claim for an equitable accounting, Forbes resigned as Trustee, and T. Christian Henderson was appointed sole trustee of the Trust.  Also, Henderson was added as a party-plaintiff.  Accordingly, subsequent references to "the Trustee" include both Forbes and Henderson.

6

subject to review de novo on appeal."); Horner v. Department of Mental Health, 268 Va. 187, 192, 597 S.E.2d 202, 204 (2004) ("Statutory interpretation presents a pure question of law subject to de novo review by this Court.").

Second, Riverside asserts that the circuit court erred in sustaining the Trustee's demurrer to its claim requesting an equitable accounting. "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). A trial court's judgment sustaining a demurrer is also a question of law and thus reviewed de novo. Id.

## III. ANALYSIS

### A. Allocation of Condemnation Compensation

The UPIA "applies to every trust . . . existing on January 1, 2000, except as otherwise expressly provided in . . . the terms of the trust." Code § 55-277.33. The parties do not dispute that the UPIA generally governs the Trust at issue in this appeal. Under the UPIA, "[a] trustee shall allocate to principal . . . [p]roceeds of property taken by eminent domain." Code § 55-277.13(4). See also Manufacturers Trust Co. v. Roanoke Water Works Co., 172 Va. 242, 256, 1 S.E.2d 318, 323-24 (1939) (a condemnation award "equitably stands in the place of the land taken"). However, Code § 55-277.3(A)(1) provides that, "[i]n allocating receipts and disbursements to or between

7

principal and income," a trustee "[s]hall administer a trust . . . in accordance with the terms of the trust . . . , even if there is a different provision in this chapter."  That provision's corollary is contained in Code § 55-277.3(A)(3): the trustee "[s]hall administer a trust . . . in accordance with [the UPIA] if the terms of the trust . . . do not contain a different provision."  Thus, the question is whether the Trust contains a different provision regarding the allocation of the condemnation compensation to principal or income.

According to the Trustee and the circuit court, paragraph 3, subsection (C)(i) of the Trust provides an allocation of compensation from a condemnation action different than the requirement in Code § 55-277.13(4) that such be allocated to principal.  Paragraph 3 of the Trust is titled DUTIES OF THE TRUSTEE.  In subsection (C) proper, the Trustee is directed to "distribute all net income generated by the [T]rust and the [T]rust property unto the Grantor" during her lifetime. Subsection (C)(i) includes in "net income" "all funds received from the rental of the [T]rust property and/or generated from or by the [T]rust property and/or any proceeds from the [T]rust property."  The Trustee argues that the condemnation compensation constitutes "proceeds from the [T]rust property."

When considering the language used in a trust agreement, "the intent of the grantor controls."  Harbour v. SunTrust Bank,

8

278 Va. 514, 519, 685 S.E.2d 838, 841 (2009). We ascertain the intent of the grantor by looking at the language used in the trust agreement. Id. As with other written instruments, " [t]he primary significance of words should ordinarily attach and does attach, unless it is manifest from the [instrument] itself that other definitions are intended.' " Wallace v. Wallace, 168 Va. 216, 224, 190 S.E. 293, 296 (1937) (quoting Rady v. Staiars, 160 Va. 373, 376, 168 S.E. 452, 452 (1933)); accord PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 358, 626 S.E.2d 369, 372 (2006) (" 'Words . . . are normally given their usual, ordinary, and popular meaning.' " (quoting D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995))). Neither the Trust nor the UPIA defines the term "proceeds."[4] It is a "word of varied significance and employed with different meanings." Chase v. The Union Nat'l Bank of Lowell, 176 N.E. 508, 510 (Mass. 1931). See also Gould v. Lewis, 267 Ill. App. 569, 572 (1932) (The meaning of the term "proceeds" "in each case depends on its context, depends very much on the connection in which it is

---

[4] In addition to its use in the definition of "net income," the term proceeds is found in the Trust provisions requiring the Trustee to "borrow on a non-recourse basis using the [T]rust property as security." The Trust provisions direct the Trustee to distribute "the proceeds of the loans . . . to the Grantor during her lifetime at least annually, . . . and distribute the proceeds of the loan obtained at the time of the death of the Grantor to the estate of the Grantor."

9

employed and the subject matter to which it is applied." (internal quotation marks omitted)). It has been defined, however, as "[t]he value of land, goods, or investments when converted into money; the amount of money received from a sale." Black's Law Dictionary 1325 (9th ed. 2009).

We agree with the Trustee that "proceeds from the [T]rust property" include the condemnation compensation at issue. The UPIA uses the term "proceeds" when referring to the compensation awarded in exchange for property taken by eminent domain. Code § 55-277.13(4) ("[p]roceeds of property taken by eminent domain"). Further, the Trust provisions direct that the Trustee "shall not <u>sell</u> the [Trust] property . . . except to a condemnor pursuant to a notice of condemnation." (Emphasis added.) Thus, the Grantor recognized that the Trust could, at some point, receive compensation from an eminent domain action, which the Trust termed a sale, that would take some or all of the Trust property. And, "money received from a sale" is commonly described as "proceeds." Black's Law Dictionary 1325 (9th ed. 2009).

Relying on Code § 55-277.33, Riverside, however, contends that every section of the UPIA applies "except as otherwise expressly provided in the . . . terms of the trust." <u>Id.</u> According to Riverside, the Trust's reference to "any proceeds from the [T]rust property" in the definition of the term "net

income" is not an express provision negating application of the UPIA provisions allocating "[p]roceeds of property taken by eminent domain" to principal. Code § 55-277.13(4). We do not agree with Riverside's interpretation of Code § 55-277.33. That section means that Chapter 15.1 of Title 55, styled Uniform Principal and Income Act, applies as a whole to any trust in existence on January 1, 2000 unless the trust instrument itself expressly states that the UPIA does not apply. When the trust instrument so states, no part of the UPIA governs such a trust. As previously stated, the parties here do not dispute that the UPIA applies to the Trust at issue.

In contrast to Code § 55-277.33, Code § 55-277.3 does not contain language requiring express rejection of the UPIA's default rules for allocating receipts and disbursements between principal and income. Instead, Code § 55-277.3 directs a fiduciary to "administer a trust . . . in accordance with the terms of the trust" when allocating receipts to principal or income "even if there is a different provision in [the UPIA]." This section is consistent with the principle that the "intent of the grantor controls." Harbour, 278 Va. at 519, 685 S.E.2d at 841. So, the relevant inquiry is whether the Trust at issue contains any provision reflecting the Grantor's intent with regard to the allocation of condemnation compensation.

11

It is correct, as Riverside asserts, that paragraph 3(C)(i) of the Trust does not expressly address allocation of receipts between principal and income. Instead, paragraph 3 pertains to the Trustee's duties, which, among other things, include the duties to "hold, manage, and generate income from the [T]rust property," pay taxes, repair the Trust property, make capital improvements, and distribute "net income generated by the [T]rust and the [T]rust property" to the Grantor during her lifetime. Riverside contends that the definition of the term "net income" contained in subsection (C)(i) of paragraph 3, when read in context, merely provides the method of calculating net income and does not provide any rule for allocation of condemnation compensation.

The provisions of paragraph 3(C)(i) state:

i. For purposes of this Agreement, net income shall be defined as all funds received from the rental of the trust property and/or generated from or by the [T]rust property and/or any proceeds from the [T]rust property and/or provided by the Grantor under paragraph C.ii. to maintain a positive operating cash flow LESS all funds paid by the Trustee for (a) current taxes due against the [T]rust property, (b) current insurance premiums for coverage secured on the [T]rust property, (c) repairs made to the [T]rust property, (d) currently due installments of principal and interest on loans secured by the [T]rust property, including authorized loans for capital improvements and loans for distribution to the Grantor, and (e) the administration of this [T]rust, including but not limited to, [T]rustee's fees, accounting fees, recording

12

fees, management fees, attorney's fees, and filing fees.

Undoubtedly, this subsection explains how to compute the "net income" distributable to the Grantor. Calculating net income necessarily starts with determining gross income and then deducting the allowable expenses. In this Trust, the Grantor specifically included in gross income "all funds received from the rental of the [T]rust property and/or generated from or by the [T]rust property and/or any proceeds from the [T]rust property." By doing so, the Grantor allocated those receipts to income, and the Trustee is required to administer the Trust in accordance with its terms. Code § 55-277.3(A)(1). And, as we have already explained, the term "proceeds," as used in this Trust, encompasses the condemnation compensation at issue.

We are not persuaded otherwise by the cases cited by Riverside. For example, in Estate of Reynolds, 432 A.2d 158 (Pa. 1981), the question was whether shares of stock received by the trustee of a testamentary trust as part of a "3-for-2 stock distribution" should be allocated to principal or income. Id. at 159. The relevant provisions of the trust directed that "any and all dividends shall be considered as income." Id. at 160. However, the Pennsylvania Principal and Income Act mandated the allocation of the stock distribution at issue to principal. Id. at 161. According to the court, "[t]o supersede the operation

of the Principal and Income Act, . . . a [contrary] direction [by a settlor] must be clearly expressed." Id. Thus, resolution of the dispute turned on the definition of the term "dividend." Finding nothing in the trust agreement to indicate that the settlor intended such a stock distribution to be allocated to income and recognizing that the corporation had referred to the distribution as a "dividend" or a "split," the court concluded that the stock distribution was not a dividend, meaning that it was allocated to principal in accordance with the Pennsylvania Principal and Income Act. Id. at 163-64.

In Venables, the issue concerned the allocation of trust expenses against principal and income. 808 P.2d at 771. In several paragraphs of the testamentary trust, the decedent directed the deduction of "costs and expenses," and in one paragraph, directed the trustee to "defray the reasonable costs of this trust including reasonable compensation to said trustee." Id. at 770. "[B]ecause the trust instrument lack[ed] the specificity to identify and allocate adequately the variety of costs and expenses involved in administering the trust," the court concluded that the Washington Principal and Income Act controlled the allocation of the expenses against principal and income. Id. at 772. In contrast, the Trust at issue in the case before us expressly allocates "any proceeds from the [T]rust property" as income to be distributed to the Grantor,

14

and the term "proceeds" encompasses money received as compensation for real property taken by eminent domain.  As the allocation rule for condemnation compensation is provided in the Trust, there is no need to resort to the UPIA's default rules.

Finally, Riverside contends that the circuit court's conclusion that the condemnation compensation should be allocated as income would lead to an absurd result because, had all the Trust property been taken by eminent domain, rather than only a portion, the entire Trust corpus could be depleted.  But, the Trust provisions allow the Grantor to convey additional property, real and/or personal, to the Trustee.  Furthermore, if the language used by a grantor is clear and unambiguous, "we will not consider the grantor's apparent reasoning or motivation in choosing the particular language employed."  Harbour, 278 Va. at 519, 685 S.E.2d at 841.

Thus, we conclude that the circuit court did not err by concluding that the condemnation compensation should be allocated as income to the Trust, pursuant to its terms.  The court properly granted partial summary judgment in favor of the Trustee on this issue.

## B. Equitable Accounting

Pursuant to Code § 8.01-31, "[a]n accounting in equity may be had against any fiduciary . . . for receiving more than comes to his just share or proportion."  In its third amended

15

counterclaim, Riverside alleged, among other things, that the Trustee failed to timely pay real estate taxes and storm water fees assessed against the Trust property despite the Trust provisions requiring the Trustee to "pay current taxes against the property." According to Riverside, the failure to pay such fees resulted in an "overstatement" of net income payable to the Grantor. In the demurrer to these allegations, the Trustee stated that the third amended counterclaim "fail[ed] to set forth grounds sufficient to entitle Riverside to an equitable accounting by the Trustee."

The properly pled facts in Riverside's third amended counterclaim, accepted as true, see Glazebrook, 266 Va. at 554, 587 S.E.2d at 591, are sufficient to state a claim that the Trustee, as a fiduciary, received "more than comes to [her] just share." Code § 8.01-31. The circuit court, however, sustained the Trustee's demurrer because it concluded that Riverside obtained the "relief sought in the equitable accounting" when the Trustee complied with the court's order requiring her to provide, pursuant to the Trust provisions, a "statement showing the condition of the Trust and the receipts and disbursements."

Whatever accounting the Trustee provided pursuant to the circuit court's order was not produced to the circuit court and is not part of the record in this appeal. "In determining whether the pleading states a cause of action, the court may

16

also examine any exhibits accompanying the pleading."  TC MidAtlantic Dev. v. Commonwealth, 280 Va. 204, 210, 695 S.E.2d 543, 547 (2010); accord Dodge v. Trustees of Randolph-Macon Woman's Coll., 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008).  But, in the absence of such exhibits, we, like the circuit court, "are confined to the facts as they are alleged in the [pleading]."  Fun v. Virginia Military Inst., 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993).

Thus, the circuit court erred in considering the Trustee's accounting because it was neither an exhibit accompanying the pleading nor a document produced in response to a motion craving oyer.  See Dodge, 276 Va. at 5, 661 S.E.2d at 803 (In ruling on a demurrer, a trial court may "consider the facts alleged as amplified by any written documents added to the record as a result of the motion" craving oyer.).

The Trustee, nevertheless, asserts that Riverside does not have a sufficient interest at stake to warrant an equitable accounting nor has it sustained a harm that would be redressed by such.  The circuit court, however, found that Riverside is an entity that may request an equitable accounting pursuant to Code § 8.01-31, and the Trustee does not challenge that finding on appeal.  See Rule 5:17(c).

IV. CONCLUSION

For these reasons, we will affirm the portion of the circuit court's judgment granting partial summary judgment in favor of the Trustee with regard to the allocation of the condemnation compensation as income.  We will reverse the portion of the circuit court's judgment sustaining the demurrer as to the claim for an equitable accounting under Code § 8.01-31 and remand for further proceedings.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded</u>.