COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Elder, Beales and Senior Judge Willis
Argued at Salem, Virginia


ROBERT S. JONES

                                                           MEMORANDUM OPINION[*] BY
v.       Record No. 2086-11-3                       JUDGE LARRY G. ELDER
                                                         OCTOBER 9, 2012

CRISTOBEL O. VON HEMERT JONES


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

George H. Dygert (Dygert, Wright, Hobbs & Heilberg, PLC, on
briefs), for appellant.

Shelly R. James (Danita S. Alt; Law Office of Shelly R. James,
PLLC, on brief), for appellee.


Robert S. Jones (husband) appeals the equitable distribution award accompanying his

divorce from Cristobel O. von Hemert Jones (wife). On appeal, he argues that the trial court

erred by imposing a constructive trust on a portion of the parties' marital property. Husband also

challenges the classification of the small farm as wife's separate property, the finding that

husband did not prove outstanding debts to his friends Kinsey and Lilly, the determination of the

rental value of the rental house as a marital asset, and the finding of the value of the horses as

provided by wife's expert witness testimony. Wife seeks an award of attorney's fees and costs.

For the reasons that follow, we affirm, and we deny wife's request for fees and costs.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

BACKGROUND

After the parties married in 1979, wife's father, John von Hemert, bought them a house on an acre of land. The parties used the property as their marital home.

Von Hemert also bought fourteen acres of land for the parties' use ("the small farm"). The parties farmed and trained horses on the land. They paid von Hemert $200 a month in rent for use of the property, although they did not sign a lease. The parties paid for minor improvements and repairs on the property; von Hemert paid for other improvements and upkeep on the property.

Von Hemert created a trust specifying that upon his and his wife's death, the small farm would pass to his "daughter Cristobel O. Jones." Both von Hemert and his wife are now deceased. Husband testified that he had expected that he and wife would each inherit half-ownership of the small farm upon von Hemert's death in exchange for his maintenance of the property.

The parties subsequently bought sixty-one acres ("the large farm"), in part using money from the children's trust funds. The children were told the land "was an investment for [their] futures." The parties partitioned three acres from the large farm and built a new marital home on it ("the house tract"). The parties rented out their previous home. Mary Harris moved into the rental house in 2006. Harris did not pay rent, but the lease obligated her to help on the horse farm in exchange for her occupancy. Harris was physically able to provide only limited help due to her poor physical health. Wife wanted Harris to pay monetary rent. She testified that she had believed Harris's rent to be "forthcoming."

Approximately two weeks before trial, wife designated Darlene Kemper as an expert in the valuation of horses owned by the parties. On the day of trial, husband objected to Kemper as

an expert witness because wife had not provided this information during discovery. The trial court overruled husband's objection as untimely.

At trial, Kemper provided valuations for the parties' horses. Kemper testified that she was familiar with the parties' horse farm and some of their horses. However, she had not seen any of the horses in at least a year. Husband testified that most of the horses were unbroken and therefore worthless. Husband stated that as a result he gave away all but two of the horses.

Husband also testified that he borrowed $20,000 from his friend, Sam Lilly, and $10,000 from his friend, Glen Kinsey, for improvements on the farm in 2009. Husband presented loan documents to the trial court, but no other supporting evidence. Each loan agreement provided that husband would pay $1,000 interest yearly to the loan holder until the loan was repaid in full. Husband testified that both debts were outstanding.

In the divorce decree, the trial court decided equitable distribution. In pertinent part, the trial court found that half of the funds used to buy the large farm and the house tract were from the children's "trust/education funds." Therefore, the trial court reasoned:

> A one-half interest of the Large Farm will be subject to a constructive trust for the benefit of the two children. The Court further finds that the house was built on three acres that were originally part of the 61 acres that the children's trust money purchased a one-half interest in as set forth above. The court finds that a constructive trust be placed upon the marital residence and the three acres of land . . . for the benefit of the children.

The trial court concluded that the large farm and house tract were marital property, subject to the children's trust.

The trial court found that the small farm was in von Hemert's trust, and wife's "right to the property vested at the death of her mother." As for the alleged loans from Kinsey and Lilly, the trial court questioned the credibility of husband's evidence, noted the lack of documentation of the funds themselves, and found husband failed to establish the existence of the debts. The

trial court alternatively found that if the debts "somehow exist[ed], [they] would be husband's sole obligation."

The trial court classified the rental house as marital property. The trial court found that husband allowed Harris to live in the rental property rent-free without wife's knowledge. The trial court reasoned, "[T]he house could have been providing rental income to the family in that amount [of fair rental value] while occupied by Ms. Harris, and as it had in the past. The Court will treat the five years of occupancy as a rental income of $30,000.00, and will treat that as an asset to be allocated to husband."

Regarding the horses' valuations, the trial court discounted husband's testimony as incredible. The trial court found Kemper's testimony to be "the most reliable evidence of their value."

On appeal, husband asks this Court to reverse and remand to the trial court for reconsideration of the equitable distribution award.[1]

## II.

## ANALYSIS

### A. Constructive Trust

Husband argues that the trial court lacked the authority to impose a constructive trust on the house tract and the large farm. Wife counters that husband lacks standing to contest the imposition of the trust because the trial court awarded the property to her. Wife further contends that the constructive trust was an appropriate acknowledgment of a marital debt rather than an equitable distribution award to a non-party.

---

[1] Wife argues that husband did not preserve his assignments of error for appeal by failing to adequately raise them at the trial level. We have reviewed the record and find that husband adequately preserved his assignments of error under Rule 5A:18.

We first address wife's standing argument. The circuit court found that both the large farm and the house tract were marital property. Therefore, husband does, in fact, have standing to challenge this portion of the circuit court's ruling. See Grisso v. Nolen, 262 Va. 688, 693, 554 S.E.2d 91, 94 (2001) ("'The point of standing is to ensure that a person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case.'" (quoting Cupp v. Bd. of Supervisors, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984))). The trial court's allocation of the house tract and the large farm to wife in dividing the marital estate did not deprive husband of his interest in those properties as marital property.

However, the trial court's purpose in establishing the constructive trust was simply to recognize the children's interest in the properties for purposes of equitable distribution. Because neither party denies the children's interest in the properties, the imposition of the constructive trust as opposed to a simple recognition of the parties' debts to the children did not affect the equitable distribution award. Therefore, the trial court's authority, or alleged lack thereof, does not provide husband with a suitable basis to challenge the equitable distribution award.[2]

## B. Small Farm as Separate Property

Husband contends that the trial court erred in determining the small farm was wife's separate property. He argues that instead the fourteen acres and the improvements on it should be considered marital property. Wife responds that the trial court correctly interpreted the language of von Hemert's trust in concluding the small farm was her separate property.

Husband relies on the following language in von Hemert's trust:

> My Trustee shall distribute all my interest in a parcel of real
> property containing approximately fourteen acres located on the
> northwestern side of State Highway No. 807 . . . , adjacent to a

---

[2] We are not ruling on the appropriateness of establishing a constructive trust for individuals not parties to the litigation in an equitable distribution proceeding. This decision does not preclude a party from challenging the constructive trust in the appropriate forum.

parcel owned by my daughter Cristobel O. Jones, including all my
farm equipment and my farm pick-up truck, to my daughter
Cristobel O. Jones if she is then living.

Husband contends that the language "my daughter Cristobel O. Jones" is ambiguous, because the

adjacent parcel was actually owned by both parties.

The trial court held that this language unambiguously referred to wife. We review the

language in von Hemert's trust *de novo*. See Riverside Healthcare Ass'n, Inc. v. Forbes, 281 Va.

522, 528, 709 S.E.2d 156, 159 (2011).

> When considering the language used in a trust agreement,
> "the intent of the grantor controls." Harbour v. SunTrust Bank,
> 278 Va. 514, 519, 685 S.E.2d 838, 841 (2009). We ascertain the
> intent of the grantor by looking at the language used in the trust
> agreement. Id. As with other written instruments, "'[t]he primary
> significance of words should ordinarily attach and does attach,
> unless it is manifest from the [instrument] itself that other
> definitions are intended.'" Wallace v. Wallace, 168 Va. 216, 224,
> 190 S.E. 293, 296 (1937) (quoting Rady v. Staiars, 160 Va. 373,
> 376, 168 S.E. 452, 452 (1933)).

Id. at 529, 709 S.E.2d at 160 (alterations in original).

We conclude that the language in the trust that the small farm was to be left "to [von

Hemert's] daughter Cristobel O. Jones if she is then living" meant just that: the property was left

to wife. The fact that the trust referred to the adjacent parcel as owned by wife when she shared

ownership with husband does not render the use of her name ambiguous. Because the language

in the trust was unambiguous, we do not consider the extrinsic evidence of von Hemert's intent.

See, e.g., Lawless v. Lawless, 187 Va. 511, 519, 47 S.E.2d 431, 434 (1948) ("[U]nder certain

circumstances and conditions, extrinsic evidence may be admissible to explain ambiguous

language in a will . . . ."). Thus, we conclude that the trial court did not err by finding the small

farm was wife's separate property.

## C. Debts to Kinsey and Lilley

Husband argues that the trial court erred in finding that he did not owe a debt to either of husband's friends, Kinsey or Lilly. He contends that without evidence contesting the existence of those debts, the trial court was required to accept his testimony that he borrowed the money. Further, husband contends that the loans are marital debts. Wife responds that the trial court acted within its discretion in rejecting husband's impeached and inconsistent testimony.

On appeal, we view the evidence in the light most favorable to wife, as the prevailing party below. Brown v. Burch, 30 Va. App. 670, 681, 519 S.E.2d 403, 408-09 (1999). "'Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). We recognize Supreme Court precedent that a trial court may not "arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with the facts appearing in the record, even though such witnesses are interested in the outcome of the case." Hodge v. Am. Family Life Assurance Co., 213 Va. 30, 31, 189 S.E.2d 351, 353 (1972). However, this is not what occurred here.

Husband testified that he handwrote the loan document for the loan from Kinsey. In contrast, Harris testified that she handwrote the document, although husband provided the wording.

Husband testified that he took out the loans to pay for farm expenses. Although the 2009 agreements provided husband would pay $1,000 interest to each Kinsey and Lilly annually, his tax records from 2009 and 2010 did not show any non-mortgage interest paid as a farm expense. Last, the written loan agreements did not indicate husband's actual receipt of the money.

In light of the evidence inconsistent with husband's testimony, the trial court was entitled to reject husband's testimony that he had outstanding debts to Kinsey and Lilly.

### D. Rental Value of House

Husband contends that the trial court erred "in determining that the rental value of the small house during the time it was occupied by Ms. Harris is a marital asset." Wife responds that the record supports the trial court's finding.

To the extent husband argues that wife agreed to let Harris live there rent free, "the trier of fact ascertains a witness' credibility, determines the weight to be given to [a witness'] testimony, and has the discretion to accept or reject any of the witness' testimony." Street, 25 Va. App. at 387, 488 S.E.2d at 668. The trial court was entitled to accept wife's testimony that she had not agreed for Harris to live at the house rent free and that she expected the rent to be forthcoming.

To the extent that husband challenges the amount that the trial court assigned as the lost value of the rental house, the trial court based the value on the rental income the parties received when they previously rented the house to a paying tenant. The trial court's valuation is a finding of fact, and we "will 'affirm if the evidence supports the findings and if the trial court finds a reasonable evaluation.'" Sfreddo v. Sfreddo, 59 Va. App. 471, 493, 720 S.E.2d 145, 156 (2012) (quoting Howell v. Howell, 31 Va. App. 332, 339, 523 S.E.2d 514, 518 (2000)). We hold the trial court's valuation was reasonable and supported by the evidence in the record.

To the extent that husband argues that Harris's help on the farm constituted reasonable consideration in exchange for the lease, and thus there was no unrealized value from the rental house, the trial court, citing "credibility issues," rejected the testimony that Harris provided any consideration in exchange for her occupancy of the house. It is undisputed Harris's poor health

limited the amount of assistance she could render. After reviewing the record, we conclude that the trial court's finding was not plainly wrong or without evidence to support it.

For these reasons, we affirm on this issue.

### E. Kemper's Testimony

Husband contends that the trial court should not have allowed Kemper to testify as an expert witness and that her testimony lacked an adequate foundation.[3] Wife responds that husband's objection to Kemper as an expert witness was not timely and that the trial court appropriately exercised its discretion in finding Kemper's valuations credible.

Husband argued in closing that his testimony that the horses were worthless was more persuasive than Kemper's valuation. The principles that "the trier of fact ascertains a witness' credibility" and "determines the weight to be given to [a witness'] testimony" apply to the testimony of both lay and expert witnesses. Street, 25 Va. App. at 387-89, 488 S.E.2d at 668-69. Because the valuation of the trial court was reasonable and supported by the evidence in the record, we affirm on this issue. See Sfreddo, 59 Va. App. at 493, 720 S.E.2d at 156.

### F. Attorney's Fees

Wife seeks attorney's fees and costs incurred in this appeal. "The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Because husband's appeal is not frivolous, we deny wife's request for fees and costs.

---

[3] To the extent husband contests the trial court's overruling as untimely his objection to Kemper as an expert witness, his argument is barred by Rule 5A:20(c) because he did not include this argument in an assignment of error. See, e.g., Zedan v. Westheim, 60 Va. App. 556, 569 n.4, 729 S.E.2d 785, 791 n.4 (2012). Similarly, to the extent husband challenges the admissibility of Kemper's testimony due to the lack of an adequate foundation, that argument is foreclosed by Rule 5A:18, because he did not object at trial to the admissibility of Kemper's testimony based on an alleged lack of an adequate foundation.

III.

For the reasons stated above, we affirm the equitable distribution award and deny wife's request for attorney's fees and costs.

Affirmed.